**In re Anton B. BECKER, Elizabeth A. Becker, Debtors.**

**Bankruptcy No. 3–83–453.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

April 9, 1984.

Mary Carlson, Afton, Minn., for FmHA and CCC.

Bertha Koch, pro se for Koch Elevator.

Jerrold Bergfalk, Minneapolis, Minn., for Ledyard State Bank.

Robert Monson, St. Paul, Minn., for Dennis Stolkes.

John Hedback, U.S. Trustee, appeared in pro. per.

Thomas Lovett, Minneapolis, Minn., for Committee of Unsecured Creditors.

Richard Nadler, St. Paul, Minn., for debtors.

## ORDER DISMISSING CASE

DENNIS O'BRIEN, Bankruptcy Judge.

This matter came before the Court on the motions of Farmers Home Administration ("FmHA") and Koch Elevator to dismiss this case pursuant to 11 U.S.C. § 1112(b). The motions to dismiss were supported by Commodity Credit Corporation ("CCC"), Ledyard State Bank, Dennis Stolkes, Massey Ferguson Credit Corporation, Art Maloney, Northern Investment Company, the United States Trustee, and the Unsecured Creditors Committee.

Based on the file and arguments of counsel, the Court makes the following order pursuant to the Rules of Bankruptcy Procedure.

### I

The debtors filed a voluntary Chapter 11 bankruptcy petition on March 29, 1983. The debtors' scheduled debts totalling approximately $790,000.00 of which $674,-000.00 represented secured debt. Assets were valued at $915,000.00 of which $360,-000.00 represented the value of the 177 acres of real property the debtors were purchasing from Art Maloney on a contract for deed.

At the time of filing the debtor owed FmHA $186,000.00. This debt has increased $18,000.00 since the filing for accrued interest. FmHA's debt is secured by

a second mortgage on the 177 acre farm. The debtors have made no payments to FmHA since the filing. It is undisputed that the debtor has defaulted on the underlying contract for deed by failing to pay the vendor, Art Maloney, the annual $12,972.00 payment due in March, 1984. The underlying balance due on the contract for deed is $105,000.00. The debtors have also failed to pay delinquent property taxes in the amount of $5,082.00.

At the time of filing the debtors owed CCC $200,755.00. The debtors have never listed this debt in their schedules although there is no question it exists. This debt is secured by 76,418 bushels of 1981 and 1982 corn of which 53,518 bushels are stored at the debtors' farm and the balance is stored at Koch Elevator. The corn on the farm is stored in several bins. In the "flat storage" bin there are 31,397 bushels of corn. There was voluminous testimony on the deterioration of this corn since the filing. Both the ASCS officer, Paul Ness, and the debtor, Anton Becker, testified that the stored corn was in poor condition with spoilage increasing. Both stated that the corn was in need of screening and aeration if it was going to be salvaged at all. They also testified that the corn is in serious danger of weavil infestation as the warm weather continues unless aerated and treated. The "best use" to which the corn could be put is to feed it to hogs. However it is collateral for the CCC loan and the debtor has made only nominal payments on the debt since filing. If CCC were to call its loan at this time it would suffer a loss of approximately $40,000.00 on the debt.

The debtors owed Koch Elevator $58,-000.00 at the time the bankruptcy petition was filed. The Koch debt is secured by a third mortgage on the debtors' property. On the debtors' own A–2 bankruptcy schedules they list the value of the security as only $36,000.00—thereby treating Koch as undersecured. The debtors have also not paid Koch any storage fees for the CCC corn they retain on behalf of the debtors since November 1983.

The debtors' financial reports filed with the U.S. Trustee since the filing in March of 1983 reflect a net operating loss of $107,000.00 without any debt service on the land contract or mortgages nor any payments to unsecured creditors. The financial reports are filed by the debtors and reflect all receipts and disbursements on a monthly basis. The total receipts since the filing minus the total disbursements result in a net loss of $107,000.00.

This case has been pending before the Court for over one year. There has been no plan or disclosure statement filed in that time.

## II

■ 11 U.S.C. 1112(b) states: "on request of a party in interest, and after notice and a hearing, the court may ... dismiss a case ... for cause, including—(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; (2) inability to effectuate a plan; (3) unreasonable delay by the debtor that is prejudicial to creditors..." The legislative history of the section indicates that the court is to be given wide discretion to make an appropriate disposition of the case, including consideration of factors not specifically listed. H.R. No. 95–595, 95th Cong., 1st Sess. (1977) 405; S.R. No. 95–989, 95th Cong., 2nd Sess. (1978) 117, U.S. Code Cong. & Admin.News 1978, p. 5787. The legislative history also indicates that the Court may use its equitable powers to reach an appropriate result in individual cases. Id.

■ The Court finds that ample cause for dismissal of this case exists. The cash flow statements filed by the debtors reflect a negative cash flow since the filing of their petition of $107,000.00. The value of the equipment and machinery which serves as collateral for several of the creditors continues to depreciate through continued use. The debtors are not making payments to many of these creditors to adequately protect their interests. The value of approximately 31,000 bushels of corn which serves as collateral for a CCC debt is

also rapidly declining through spoilage. It is also well known that farm land values have decreased dramatically in the last year. The land is collateral for the Maloney contract for deed, the FmHA loan, and the Koch Elevator debt. The debtors schedules show they have no equity in the property. No payments have been made on any of the land indebtedness since the filing of this case except for a five thousand dollar payment to Koch Elevator as "adequate protection". All of these facts indicate there has been a continuing loss to the estate. See, e.g. *In the Matter of White Plains Road, Inc.*, 28 B.R. 515 (Bkrtcy.N.Y.1983).

Furthermore, the Court finds there is no reasonable likelihood of rehabilitation. The debtors' operations simply cannot cash flow itself. The debtors' own expert testified that his cash flow projections were based upon the debtors either not making any debt service in 1984 and 1985, except on the contract for deed in 1984 and an interest payment to FmHA in 1985, or in obtaining operating loans in the sum of approximately $110,000.00. This Court would not be able to confirm any plan which proposed such payments to creditors. See: 11 U.S.C. 1129(a)(7)(A)(ii). The debtors' expert testified that in the absence of substantial financing, e.g., a cash collateral arrangement, the debtors' operation cannot work. The debtors proposed use of the CCC collateral, granting the CCC a replacement lien in the 1984 crop as adequate protection. CCC indicated clearly its intent to oppose any use of its collateral and alone, a replacement lien in a non-existent crop is not adequate protection within the meaning of 11 U.S.C. 361. The debtors have no unencumbered assets and have offered no evidence concerning any source of new capital. Since all of the debtors' assets are fully collateralized and if the estate were liquidated, all proceeds would pass to secured parties, it is clear that any plan would have to be based on an infusion of new capital or future earnings. As stated previously, there is no evidence in the record to support a conclusion that there is any possibility for an infusion of third party funds. See *White Plains Road*, supra, at 518; and *In re Pappas*. 17 B.R. 662, at 668 (Bkrtcy.Mass.1982). The debtors' own evidence indicated that the operation is incapable of servicing all the secured debt and financing itself. During the entire pendency of this case, the debtor has shown a negative cash flow. "Although the debtor may have other ideas relative to a rehabilitation of [the] property, it is not appropriate that [he] be given choices *ad infinitum* to the continual delay and detriment of others." *In re Tolco Properties, Inc.*, 6 B.R. 482, 488 (Bkrtcy.Va.1980).

The debtors' case has been pending over one year without proposing any plan or disclosure statement. The debt structure described supra coupled with the passage of time is a clear indication of the debtors' inability to effectuate a plan. 11 U.S.C. 1112(b)(2). Debtors' counsel indicated to the Court a plan and disclosure statement could be filed within sixty days. However, the debtors have not successfully negotiated with their major secured parties as to any proposed restructuring of debt. The debtors' proposed operations for the next two years provide for payments only to the contract for deed vendor and an interest payment to FmHA. No other payments are proposed to any secured party. Such a plan would not be confirmed. See: 11 U.S.C. 1129. In addition, all such creditors would be entitled to relief from the automatic stay pursuant to 11 U.S.C. 362(d)(1) to foreclose their various security interests and mortgages. This would obviously leave the debtors with very little property from which to effectuate a plan. The debtors have enjoyed the protection of Chapter 11 for over a year without proposing a plan. It appears they are unable to do so and therefore "cause" for dismissing under Section 1112(b)(2) exists.

Finally, Section 1112(b)(3) allows for dismissal of a case for "unreasonable delay by the debtor that is prejudicial to creditors." As discussed supra, the secured debts continue to accrue interest up to the value of the collateral while collateral values decline. A year in Chapter 11 without a plan

in a case of this size is clearly unreasonable delay. While the debtor enjoys the protections afforded by bankruptcy he must also meet his responsibility to his creditors of making a concerted effort to reorganize and/or rehabilitate the business operations to make them profitable. See: 11 U.S.C. 1107(a) and 1106(a)(5). The debtor has consulted with United Managers to gain assistance in reorganizing the operations. However, the creditors cannot be forced to finance (by not receiving payment on their debts for several years) the debtors entry into an almost entirely new business, i.e., hog farming. The operation is also not anticipated to begin cash flowing itself for three to four years. This would constitute further delay in the creditors receiving any payment. This further prejudices the creditors' rights to receive payment on their debts. As discussed supra, the year delay has resulted in debt increasing, collateral value decreasing, and a net operating loss for 1983 of $107,000.00. This case has been unreasonably delayed and creditors have been prejudiced. Koch Elevator's mortgage on the real estate was undersecured at the commencement of the case. With land values continuing to decline and no payments being made to either the contract for deed vendor or FmHA, Koch's position is seriously undermined. The same can be said of the position of FmHA—to the extent the debtors have failed to make payments on the underlying contract for deed with Maloney, FmHA's position becomes tenuous. As discussed supra, CCC's collateral position has decreased as the corn collateral spoils and the debtors make no payments to CCC. Other creditors with security interests in machinery and equipment have had their positions change during the pendency of the case as the debtors continue to use the collateral without making any payments to the creditors to compensate them for depreciation and wear.

Since 11 U.S.C. 1112(c) prohibits a Court from converting a Chapter 11 to a Chapter 7 when the debtor is a farmer, the Court finds that this case should be dismissed for "cause" pursuant to 11 U.S.C. 1112(b).

THEREFORE, IT IS ORDERED that the above-entitled case is dismissed.