In re IBI SECURITY SERVICE,
INC., Debtor.

Bankruptcy No. 091–71235–511.

United States Bankruptcy Court,
E.D. New York.

May 5, 1993.

Mary Jo White, U.S. Atty., E.D.N.Y. by Warren Ausubel, Asst. U.S. Atty., Brooklyn, NY, for the U.S.

### DECISION ON MOTION FOR RELIEF FROM THE AUTOMATIC STAY

MELANIE L. CYGANOWSKI,
Bankruptcy Judge:

The United States of America ("United States"), on behalf of the United States Navy, has moved for relief from the stay imposed by 11 U.S.C. § 362 in this Chapter 7 proceeding. This is a core proceeding in which the Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 1334 and § 157(b)(2)(G). The debtor, IBI Security Service, Inc. ("Debtor" or "IBI"), voluntarily filed for relief under Chapter 11 on June 4, 1991, and notice of the filing was sent to all creditors. The United States Attorney also received notice of the filing. The Debtor's case was converted to Chapter 7 on February 3, 1993.

The request for relief from stay arises from a car accident which occurred on May 29, 1990. The accident involved a vehicle owned by IBI and operated by an IBI employee, Anthony DeTora, in which Steve Bakke was a passenger, and a vehicle owned by the United States and operated by David Jacobs. On April 7, 1992, Steven Bakke commenced an action in the United States District Court for the Eastern District of New York against the United States and David Jacobs. On June 18, 1992, after IBI had filed for relief under Chapter 11, the United States filed a third-party complaint against IBI and Anthony DeTora. IBI was served with the summons and third-party complaint in July, 1992, but did not file an answer. Two

months later, the United States personally served IBI with a subpoena seeking documents, but IBI did not respond. On September 17, 1992, the district court entered a default judgment against IBI and Mr. DeTora, which provides that they are jointly and severally liable to the United States in the amount of $5,160.00 plus interest. The judgment also requires them to indemnify the United States for the amount of any judgment which might be entered against it.

At no time during the period April 7, 1992 (when the complaint was filed) through September 17, 1992 (when the default judgment was entered) did the Debtor notify the United States directly to advise it that IBI had filed previously for bankruptcy relief. Indeed, it was not until November, 1992 that the United States received a document entitled "Certificate of Commencement of Case," which stated that IBI had filed for bankruptcy relief on June 4, 1991.

On February 19, 1993, the United States moved for relief from the stay *nunc pro tunc* "so as to allow the government to enforce [the] default judgment ... against debtor IBI's insurer, First Central Insurance Company." In addition, the United States asks that it be allowed to conduct discovery from IBI with respect to the judgment. Although served with the motion papers, neither the Debtor nor the Chapter 7 Trustee filed written opposition to the relief requested, and neither appeared at the hearing held on March 15, 1993. For the following reasons, the Court concludes that the United States is entitled to relief from stay *nunc pro tunc* to June 18, 1992, the date on which it filed its third-party complaint against the Debtor.

In *Green v. Welsh*, 956 F.2d 30 (2d Cir.1992), the Second Circuit held that a discharge in bankruptcy does not preclude a tort plaintiff from pursuing a claim against the discharged debtor solely to recover from the debtor's liability insurer. In so holding, the Court noted that such a plaintiff could also move for relief from the automatic stay during the course of the bankruptcy proceeding. It is therefore clear that the United States is entitled to relief from stay in order to proceed against IBI's liability insurer, at least to the extent of establishing the insurer's liability on any policy which may have been in effect on the date of the accident.

However, since the United States failed to seek relief from stay prior to the entry of its judgment against the Debtor, it now seeks such relief *nunc pro tunc*.

Many courts have held that actions taken in violation of the stay are void and not merely voidable. But bankruptcy courts, as courts of equity, have recognized that an exception to the general rule exists where the facts and circumstances of a particular case warrant treatment of an action taken in violation of the stay as voidable. Chief Judge Conrad Duberstein held in *In re Bresler*, 119 B.R. 400 (Bankr. E.D.N.Y.1990), that the court acted within its power in lifting the stay *nunc pro tunc* to validate a foreclosure sale conducted one day after the filing of a petition in bankruptcy, where the debtor had not contested the motion for relief from stay, the mortgagee was clearly entitled to foreclose, the debtor did not attack the sale for more than four months, and the mortgagee would suffer prejudice as a result of holding the sale void. The court looked to the legislative history of the Code, the equitable powers of a bankruptcy court, and the fact that Section 362(d) allows the court to *annul* the stay.

Similarly, in *In re Downing*, 141 B.R. 748 (Bankr.N.D.Okla.1992), the bankruptcy court lifted the automatic stay to allow a tort plaintiff to proceed to trial on the issue of damages, after entry of summary judgment in violation of the stay. The court recognized an equitable exception to the general rule that a judgment in violation of the stay is void and characterized the debtor as "gambling on a state court trial" and then "playing the trump card of the automatic stay and asking that the judgment be voided." *Id.* at 750.

In the present case, neither the Debtor nor the Chapter 7 Trustee has contested the motion, perhaps because they recognize that the estate will suffer no prejudice if

the stay is lifted. In contrast, if the stay is not lifted, the United States will have to bear the expense and delay of re-doing that which has already been done. Had the United States moved for relief from stay prior to initiating its third-party claim against the Debtor, it clearly would have been entitled to relief, and although the United States arguably received notice of IBI's bankruptcy pursuant to the notice sent the United States Attorney when IBI filed, IBI remained "stealthily silent" while the United States incurred the expense and burden of motion practice involved in taking a default judgment. *Cf. In re Smith Corset Shops, Inc.*, 696 F.2d 971, 977 (1st Cir.1982). In these circumstances, this Court adopts the reasoning of Chief Judge Duberstein and holds that the United States is entitled to relief from stay *nunc pro tunc* to June 18, 1992, the date it filed its third-party complaint against IBI.

However, because the Court is concerned about the proceeds of a policy being exhausted by any one claimant, it does not believe it to be appropriate at this time for the United States to actually recover proceeds without further application to this Court on notice to the insurer.