**In re LIZERIC REALTY CORP., Debtor.**

**Bankruptcy No. 95 B 43785 (JLG).**

United States Bankruptcy Court, S.D. New York.

Nov. 20, 1995.

As Amended Nov. 28, 1995.

Certilman Balin Adler & Hyman, L.L.P., East Meadow, NY, for Movant.

Law Offices of Allen C. Rolle, P.C., Brooklyn, NY, for Debtor.

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Leo C. Aloi ("Aloi") seeks an order pursuant to § 1112(b) of the Bankruptcy Code ("Code") dismissing this voluntary chapter 11 case. Alternatively, he seeks an order pursuant to § 362(d)(1) of the Code annulling the automatic stay to give effect to his purchase of debtor's sole asset (defined below as the "Building") at a post-petition foreclosure sale innocently conducted by Aloi in violation of the stay. As a final alternative, pursuant to § 543(d) of the Code Aloi seeks to excuse the state court appointed receiver of rents

and profits of the Building from complying with the turnover provisions of § 543(b) and an order pursuant to §§ 363(c)(2) and (e) of the Code prohibiting debtor from utilizing his cash collateral. For the reasons stated herein, we deny Aloi's motion except that pursuant to § 543(d) the receiver is excepted from the turnover provisions of § 543(b) of the Code. Aloi has consented to the receiver's use of cash collateral to the extent necessary to pay normal operating costs of the Building.[1]

### Facts

The facts as established during the evidentiary hearing on this motion are as follows. Debtor is a New York corporation wholly owned by Eric Wright. By proclamation of the New York Secretary of State dated June 29, 1994, debtor was dissolved and its charter was forfeited pursuant to § 203–a of the New York State Tax Law ("Tax Law") for failing to pay its franchise taxes. To date, debtor has taken no steps to reinstate its charter, see Tax Law § 203–a(7), or to wind up its affairs in accordance with Tax Law § 203–a(10) and New York Business Corporation Law § 1005(a)(1).

Debtor's sole asset is a building located at 41 St. Nicholas Terrace, New York, New York (the "Building"). Aloi is a 76 year old retired New York City policeman. He holds a perfected first mortgage on the Building in the sum of at least $219,000 on account of a short term $180,000 loan he made to debtor on or about April 14, 1992. In or about December 1994, approximately $400,000 was paid allegedly on Aloi's behalf to the City of New York in partial satisfaction of back taxes and penalties and interest thereon. Those unpaid taxes constituted a lien on the Building. Aloi contends that the sums paid to the City increase his secured claim to more than $600,000. Debtor denies that assertion. We need not resolve that dispute at this time.

Debtor was almost immediately in default under Aloi's loan which matured on September 1, 1992. On or about October 2, 1992,

debtor filed a chapter 11 petition for reorganization in this district. On Aloi's motion, and by order dated October 23, 1993 (Brozman, J.), that case was dismissed.

On or about December 13, 1993, Aloi commenced an action in New York State Supreme Court, New York County to foreclose his mortgage. By order dated January 21, 1994, the state court appointed a receiver of the rents and profits of the Building. On or about May 22, 1995, Aloi was granted judgment of foreclosure and sale. Debtor's motion to vacate that judgment was denied on or about August 11, 1995, and the state court scheduled a foreclosure sale for August 30, 1995, at 10:00 a.m. Aloi was the successful bidder at the foreclosure sale which was held as scheduled by the state court. However, unbeknownst to Aloi, on August 30, 1995, at 9:58 a.m., debtor filed a second voluntary petition under chapter 11 of the Code herein. Pursuant to §§ 1107 and 1108 of the Code, debtor has been continued in possession of its business and assets as a debtor in possession. No creditors' committee has been appointed.

### Discussion

Section 1112(b) of the Code provides ten (10) non-exclusive bases for dismissing a chapter 11 case or converting it to one under chapter 7 of the Code, whichever is in the best interest of creditors and the estate. See 11 U.S.C. § 1112(b). See also In re Gucci, 174 B.R. 401, 409 (Bankr.S.D.N.Y.1994) ("causes" listed in § 1112(b) are non-exhaustive); In re D & F Meat Corp., 68 B.R. 39, 40 (Bankr.S.D.N.Y.1986) (same); In re Cardi Ventures, Inc., 59 B.R. 18, 21 (Bankr. S.D.N.Y.1985) (same). Many courts hold that "cause" under this provision may include debtor's lack of good faith in commencing a chapter 11 case. See, e.g., Carolin Corp. v. Miller, 886 F.2d 693 (4th Cir.1989); In re Phoenix Piccadilly, Ltd., 849 F.2d 1393 (11th Cir.1988); In the Matter of Little Creek Development Co., 779 F.2d 1068 (5th Cir.1986).

---

1. Our jurisdiction of the subject matter of this contested matter is predicated on 28 U.S.C. §§ 1334 and 157 and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the

United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding. See 28 U.S.C. § 157(b)(2)(A).

■ Aloi argues that this case should be dismissed pursuant to §§ 1112(b)(1)–(3) and on the basis of debtor's alleged lack of good faith in commencing the case. Relief is available under §§ 1112(b)(1)–(3) if movant can establish

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan; or

(3) unreasonable delay by the debtor that is prejudicial to creditors.

11 U.S.C. §§ 1112(b)(1)–(3). As movant, Aloi must prove by a preponderance of the evidence that there is "cause" for relief under § 1112(b). *See In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir.), *reh'g denied*, May 12, 1994; *In re A–K Enterprises, Inc.*, 111 B.R. 149, 150 (Bankr.N.D.Ohio 1990); *In re Mattiace Indus., Inc.*, 76 B.R. 44, 48 (Bankr. E.D.N.Y.1987). Thereafter, it is incumbent upon debtor to show that relief under § 1112(b) is not warranted. *See In re Namer*, 141 B.R. 603, 606 (Bankr.E.D.La.1992). Section 1112(b)(1) of the Code is intended to preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation. *See In re GPA Technical Consultants, Inc.*, 106 B.R. 139, 141 (Bankr.S.D.Ohio 1989) (citing *In the Matter of Little Creek Development Co.*, 779 F.2d 1068 (5th Cir.1986)). For these purposes, the term "rehabilitate" means " 'to put back in good condition; re-establish on a firm, sound basis.' " 5 *Collier on Bankruptcy* ¶ 1112.03 at 1112–19 (Lawrence P. King et al. eds., 15th ed. 1995) (quoting *Websters New World Dictionary* at 1225 (World 1964)). It is not synonymous with the term "reorganize". *Id.* Aloi argues that debtor cannot be rehabilitated because its sole option under the Tax Law is to windup and liquidate its affairs. *See* N.Y.Tax Law § 203–a(10) (McKinney 1986); N.Y.Bus. Corp.Law § 1005(a)(1) (McKinney 1986). However, pursuant to § 203–a(7), debtor can have its corporate charter reinstated and all dissolution proceedings annulled by paying the tax arrearages. N.Y.Tax Law § 203–a(7) (McKinney Supp.1995). *See Propp v. Chaya Amusement Corp.*, 155 A.D.2d 251, 546 N.Y.S.2d 628 (N.Y.App.Div.1989). Wright's undisputed testimony was that debtor will promptly do so. Thus, debtor is not necessarily precluded from rehabilitating its business. *Compare In re Cedar Tide Corp.*, 859 F.2d 1127, 1128 (2d Cir.1988), *cert. denied*, 490 U.S. 1035, 109 S.Ct. 1933, 104 L.Ed.2d 405 (1989). Aloi contends that the timing of the filing of debtor's chapter 11 petition evidences an intent to abuse the protection afforded by the Code. Wright concedes that the chapter 11 petition was filed to forestall Aloi's foreclosure sale. However, his uncontested testimony was that debtor intends to reorganize and that the petition was not filed until August 30, 1995, because he did not learn of the order of foreclosure and sale until August 29. In this circuit, "[f]iling a bankruptcy petition with the intent to frustrate creditors does not by itself 'establish an absence of intent to seek rehabilitation.' " *Matter of Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 228 (2d Cir.1991) (citation omitted). Additionally, Aloi failed to adduce evidence of a loss or diminution to the estate. Accordingly, he is not entitled to relief under § 1112(b)(1).

■ Under § 1112(b)(2) of the Code, the court may "dismiss or convert a case if [it] determines that it is unreasonable to expect that a plan can be confirmed in a chapter 11 case." 5 *Collier on Bankruptcy* ¶ 1112.03[ii] at 1112–20. Thus, courts will dismiss chapter 11 cases under this section where "the debtor lacks the ability to formulate a plan or carry one out." *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir.1989); *In re Martin*, 113 B.R. 949, 961 (Bankr.N.D.Ill.1990), *vacated on other grounds*, 124 B.R. 69 (N.D.Ill.1991). Aloi concedes that at this early stage of the case it is premature to assess debtor's ability to confirm a plan. Nonetheless, he argues that because the loan matured in September 1992, and he will not accept a plan providing for other than full payment of his claim on the plan's effective date, debtor's only option is to propose a "cram down" plan under § 1129(b) of the Code. He also contends that because of Aloi's advanced age, such a plan will not satisfy the "fair and equitable" test of § 1129(b)(2)(A). *See* 11 U.S.C. § 1129(b)(2)(A). Debtor has not proposed a plan, let alone one that purports to cram

down Aloi's claim. We are not aware of any *per se* limitation to the application of the fair and equitable rule which would bar debtor from confirming a plan under § 1129(b). Thus, Aloi's objection is premature and he is not entitled to relief under § 1112(b)(2).

■ Under § 1112(b)(3) of the Code relief is warranted when the debtor unreasonably fails to timely file a plan, to move for confirmation of a plan, or to otherwise prosecute its case. *See* 11 U.S.C. § 1112(b)(3). Aloi's motion under this provision is premature because the case is not three months old. *Compare In re Smith*, 77 B.R. 496, 500 (Bankr.E.D.Pa.1987) (case dismissed where over five years had passed since case initially filed under chapter 13 and over two years had passed since conversion to chapter 11 and debtors had no acceptable explanation for delay in prosecution of case); *In re Macon Prestressed Concrete Co.*, 61 B.R. 432, 437–38 (Bankr.M.D.Ga.1986) (two year delay in filing plan not unreasonable and prejudicial where debtor needed time to stabilize business operations, and negotiate the sale of one of its plants, and a plan could not be formulated until these processes were complete).

■ In support of his assertion that this case should be dismissed for lack of good faith, Aloi principally relies upon *In re Landmark Capital Co.*, 27 B.R. 273, 280 (Bankr. D.Ariz.1983). There, debtor purchased certain real property from North Central Development Co. ("North Central") for the sum of $54.3 million, paying $1 million cash, assuming existing mortgages and liabilities aggregating $16,256,542.03 and executing a promissory note secured by a deed of trust for the balance. *Id.* On or about September 30, 1981, debtor commenced an action in the United States District Court for the District of Arizona against North Central to rescind the purchase contract on the basis of North Central's alleged fraud. Debtor defaulted under the note and in accordance with the deed of trust, North Central scheduled a foreclosure sale for October 14, 1981. Landmark sought an order of the district court enjoining that sale and on or about January 7, 1982, the district court judge denied debtor's motion for a preliminary injunction en-joining the then scheduled January 12, 1982 sale of the property. *Id.* The next day, debtor filed its chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York. *Id.* By order of that court pursuant to 28 U.S.C. § 1472, the case was transferred to the bankruptcy court for the District of Arizona where debtor promptly filed a chapter 11 plan and disclosure statement. North Central objected to confirmation of the plan principally on the ground that the case was not filed in good faith. Additionally, North Central commenced an adversary proceeding seeking relief from the automatic stay for cause under § 362(d)(1) or, alternatively, dismissal of debtor's petition under § 1112(b) of the Code as a bad faith filing. The court granted North Central's motion for summary judgment dismissing the petition, finding that debtor's petition was not filed in good faith. The court found that of debtor's four secured creditors, North Central was the only one not being paid on a current basis and that debtor had paid substantially all its pre-petition creditors during the course of the chapter 11 case. *Id.* at 279–80. The court found the case to be a two party dispute and that the petition was filed solely to frustrate North Central's efforts to enforce its rights under its deed of trust. *Id.* at 281. Debtor has five secured creditors in addition to Aloi with claims totalling approximately $1,053,449.00. One claimant is the second mortgagee whose loan has been in default for several years. Debtor has failed to pay any of those creditors. The undisputed evidence is that the second mortgagee supports debtor's reorganization and is prepared to agree to refinance its loan. Thus, *Landmark* is distinguishable and does not support Aloi's assertion that this case should be dismissed. Debtor has cash flow and a business to reorganize. If it obtains refinancing, it will be in a position to propose a reorganization plan. There is no evidence that Aloi could block confirmation if a plan were proposed by debtor. For all these reasons this case will not be dismissed as a bad faith filing.

With irrelevant exceptions, the filing of a case under chapter 11 of the Code operates as a stay, applicable to all entities, of "the

enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the [chapter 11] case...." 11 U.S.C. § 362(a)(2). The automatic stay extends for the life of the case. *See* 11 U.S.C. § 362(c). However, on the request of a party in interest, after notice and a hearing, the court "shall" grant relief from the stay "such as by terminating, annulling, modifying, or conditioning such stay", for cause shown. *See* 11 U.S.C. § 362(d). Most courts hold that actions taken in violation of the automatic stay are void *ab initio. E.g., Ellis v. Consolidated Diesel Electric Corp.,* 894 F.2d 371 (10th Cir.1990); *In re Smith,* 876 F.2d 524 (6th Cir.1989); *In re Ward,* 837 F.2d 124 (3d Cir.1988); *In re 48th Street Steakhouse,* 835 F.2d 427 (2d Cir.1987), *cert. denied sub nom. Rockefeller Group v. 48th Street Steakhouse,* 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988); *In re Smith Corset Shops,* 696 F.2d 971 (1st Cir.1982); *Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d 1306 (11th Cir.1982). *But see Sikes v. Global Marine, Inc.,* 881 F.2d 176 (5th Cir.) (action taken in violation of the automatic stay is merely voidable), *reh'g denied en banc,* 888 F.2d 1388 (5th Cir.1989); *Algeran, Inc. v. Advance Ross Corp.,* 759 F.2d 1421 (9th Cir.1985) (same).

 In *In re Albany Partners, Ltd.,* 749 F.2d 670 (11th Cir.1984), the court recognized "that acts taken in violation of the automatic stay are generally deemed void and without effect." *Id.* at 675 (citing *Kalb v. Feuerstein,* 308 U.S. 433, 443, 60 S.Ct. 343, 348, 84 L.Ed. 370 (1940); *Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d at 1308). Nonetheless, it held that in limited circumstances, § 362(d) permits bankruptcy courts to grant retroactive relief from the stay in order to validate the otherwise void actions taken in violation of the stay. *Id.* In doing so it found that as used in § 362(d), "the word 'annulling' ... evidently contemplates the power of the bankruptcy courts to grant relief from the stay which has retroactive effect; otherwise its inclusion, next to 'terminating' would be superfluous." *Id. See also In re Siciliano,* 13 F.3d 748, 751 (3d Cir. 1994); *In re Calder,* 907 F.2d 953, 955 (10th Cir.1990); *Sikes v. Global Marine, Inc.,* 881 F.2d at 179; *In re Smith Corset Shops, Inc.,*

696 F.2d at 976–77. Aloi cites *In re Bresler,* 119 B.R. 400 (Bankr.E.D.N.Y.1990), as support for his contention that the automatic stay should be annulled in this case. There, debtor purchased real property in 1981 from the secured creditor and, with her husband, executed and delivered a note and mortgage to the creditor. Debtor and her husband made payments under the note and mortgage until late 1989 when they defaulted under the note. In or about February 1990, the creditor obtained judgment of foreclosure and sale against debtor. *Id.* at 401. On March 29, 1990, a foreclosure sale was conducted and PLP Ventures, Inc. ("PLP") was the successful purchaser. *Id.* On March 28, 1990, debtor had filed a chapter 11 and failed to inform the secured creditor of that fact. *Id.* Upon learning of the bankruptcy case, and to proceed with the closing of the sale, creditor moved by order to show cause on or about April 25, 1990, to lift the automatic stay *nunc pro tunc* as of the date of the filing. *Id.* Neither debtor nor her counsel attended the April 30, 1990 hearing on that motion and relief was granted. *Id.* Four months later, debtor moved by order to show cause to modify the April 30 order to the extent it provided *nunc pro tunc* relief. Prior to the hearing on that motion, the foreclosure sale was closed and PLP caused the property to be transferred to its assignee, Mr. Daniel Cohen. After a three day evidentiary hearing, Chief Judge Duberstein denied the motion and dismissed the case. In doing so, he relied, in part, on *Sikes* and *Albany Partners* in finding that certain "equitable factors require[d] the annulment of the stay to avoid an unfair result." *Id.* at 404. Those factors included that (1) the foreclosure sale was conducted in a commercially reasonable manner; (2) Cohen had taken title to the property; (3) creditor had shown cause under §§ 362(d)(1) and (2) for relief from the stay; (4) debtor lacked financing and could not demonstrate any likelihood that if a second foreclosure sale was held she would be able to bid on the property or that the proceeds of a second sale would exceed the proceeds of the first. *Id.* Based on those factors, the court concluded "that ordering a new sale would result in irreparable injury to the pur-

chaser as a result of the delay and additional expense arising from such resale." *Id.* *Bresler* is distinguishable from this case. Debtor opposes Aloi's request to annul the stay. Wright appeared at the foreclosure sale promptly after the petition was filed to advise Aloi of the commencement of the case. Aloi has not shown that he will be unduly prejudiced if *nunc pro tunc* stay relief is denied. Moreover, debtor has not established cause under either § 362(d)(1) or (2) for relief from the stay. The automatic stay should not be annulled under § 362(a) to give effect to actions taken in violation of the stay except in limited circumstances. *E.g., In re Albany Partners, Ltd.*, 749 F.2d at 675 (courts should be "especially hesitant to validate acts committed during the pendency of the stay"). Movant has failed to establish a right to such extraordinary relief herein. *Compare In re Calder*, 907 F.2d 953 (10th Cir.1990) (allowing creditor's proof of claim for state court judgment which had been obtained in violation of stay during debtor's previous chapter 13 case where debtor had actively litigated state court action and delayed advising creditor and state court of pendency of bankruptcy case until just prior to entry of judgment; automatic stay cannot "be used as a trump card played after an unfavorable result [is] reached in state court ..."); *In re Lipuma*, 167 B.R. 522 (Bankr. N.D.Ill.1994) (tax sale in violation of stay validated where taxing authorities lacked actual notice or reason to know of bankruptcy filing, would otherwise be entitled to relief from stay under §§ 362(d)(1) and (2), and debtor delayed notifying taxing authorities of commencement of bankruptcy case for over a year after tax sale); *In re IBI Security Service, Inc.*, 158 B.R. 1, 2 (Bankr.E.D.N.Y. 1993) (stay annulled to permit enforcement of default judgment against debtor; creditor was otherwise entitled to relief from stay to prosecute underlying action and debtor remained "stealthily silent" regarding bankruptcy case during pendency of litigation).

▮ Under § 543 of the Code, a custodian who has knowledge of the commencement of a case under the Code is barred from taking any further action in the administration of the debtor's property and must deliver to the debtor any assets of the estate in his possession at the time he learns that a bankruptcy case was filed. *See* 11 U.S.C. §§ 543(a), (b); *see also Matter of Cash Currency Exchange, Inc.*, 762 F.2d 542, 553 (7th Cir.), *cert. denied sub nom. Fryzel v. Cash Currency Exchange, Inc.*, 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985); *Dill v. Dime Savings Bank, FSB (In re Dill)*, 163 B.R. 221, 225 (E.D.N.Y.1994). Section 543(d)(1) excepts a custodian from the turnover requirements of § 543(b) if the interests of creditors and equity security holders, if the debtor is solvent, would be better served by permitting the custodian to continue in possession, custody or control of such property. *See* 11 U.S.C. § 543(d)(1). As such the section is a modified abstention provision that reinforces the policies underlying § 305 of the Code. *See In re 245 Associates, L.L.C.*, 188 B.R. 743, 748–49 (Bankr. S.D.N.Y. 1995) (citing cases). A state court appointed receiver is a "custodian" within the meaning of § 101(11) of the Code. *In re 245 Associates, L.L.C.*, 188 B.R. at 747–48; *In re Snergy Properties, Inc.*, 130 B.R. 700, 703 (Bankr.S.D.N.Y.1991); *In re CCN Realty Corp.*, 19 B.R. 526, 528 (Bankr.S.D.N.Y.1982).

▮ Aloi bears the burden of establishing cause under § 543(d) to excuse the receiver from the turnover provisions of § 543(b). *In re Northgate Terrace Apartments, Ltd.*, 117 B.R. 328, 332 (Bankr. S.D.Ohio 1990). Cause must be proved by the preponderance of the evidence. *See, e.g., In re S.E. Hornsby & Sons Sand & Gravel Co., Inc.*, 57 B.R. 909, 913 (Bankr.M.D.La. 1986) (preponderance of the evidence standard applied in turnover proceeding under § 543); *cf. Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (noting that preponderance of evidence standard applies in most civil actions between private litigants). The following factors are relevant to that determination:

1) whether there will be sufficient income to fund a successful reorganization;

2) whether the debtor will use the property for the benefit of its creditors;

3) whether there has been mismanagement by the debtor; and

4) whether there are preferences which a receiver is not empowered to avoid.

*See, e.g., In re Constable Plaza Assocs., L.P.*, 125 B.R. 98, 103 (Bankr.S.D.N.Y.1991); *In re CCN Realty Corp.*, 19 B.R. at 528–29. Aloi has not shown that there will be insufficient income to fund a successful reorganization. However, there is no evidence that there are preferences which the receiver is powerless to avoid and given debtor's previous mismanagement of the Building, it does not appear that debtor will operate it for the benefit of creditors. Prior to the receiver's appointment, debtor defaulted under two mortgages, failed to pay taxes and permitted liens to be filed against the Building. Debtor's failure to pay its franchise taxes caused it to forfeit its charter. During the hearing on this motion several tenants testified regarding the Building's maintenance and upkeep while debtor oversaw its operation. Their unanimous view was that debtor was not responsive to reasonable tenant complaints and that the Building has been better maintained and operated under the receiver. Debtor introduced testimony from Jesse R. Baker, Esq., an experienced landlord/tenant lawyer in New York City, who has previously represented Wright and entities controlled by Wright and/or his family in landlord/tenant matters. He stated that Wright was an effective landlord who maintained impressive operations. However, he acknowledged that he has never visited the Building or specifically reviewed Wright's operation of the Building. Mr. Baker apparently has considerable experience and expertise in landlord/tenant matters, and seemed sincere and forthright in his support of debtor's efforts. However, his admitted unfamiliarity with debtor's operation of the Building diminishes the probative value of his testimony. We find that pursuant to § 543(d), the receiver should be excused from turning over the Building. *See, e.g., In re Dill*, 163 B.R. at 226 (affirming bankruptcy court holding that receiver should be excused from turnover requirements where there was significant mismanagement of the properties and secured creditor had to pay for repairs to the properties); *Matter of Plantation Inn Part-*

*ners*, 142 B.R. 561, 563 (Bankr.S.D.Ga.1992) (receiver excused from turnover where court found that debtor had defaulted on mortgage payments, failed to pay taxes, failed to report revenues and pay franchise fees to its franchisor, failed to place casualty and liability insurance on the property, allowed flood insurance to lapse, hired an unqualified manager for the hotel, failed to maintain current accounting records, failed to account for approximately $20,000.00 drawn on counter checks of the business, and paid over $50,-000.00 to debtor's principal or his affiliated companies for "management services" without documentation or justification); *Matter of WPAS, Inc.*, 6 B.R. 40, 44 (Bankr.M.D.Fla. 1980) (court permitted receiver to remain in possession and control of assets where debtor disregarded its obligation to file payroll tax returns and pay FICA taxes and drew checks on accounts without determining the sufficiency of funds).

During the hearing Aloi agreed that if the receiver was continued in possession and control of the Building, he would not object to the use of his cash collateral as necessary to operate the Building. Accordingly, we need not address the portion of Aloi's motion relating to cash collateral issues.

### Conclusion

Based on the foregoing, Aloi's motion is granted in part and denied in part.

SETTLE ORDER.