Filed 11/4/13  Lee v. Wien Bakery CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SUNG J. LEE,<br><br>　　　　　Plaintiff and Appellant,<br><br>v.<br><br>WIEN BAKERY LLC, et al.,<br><br>　　　　　Defendant;<br><br>KEVIN SINGER, as receiver etc.,<br><br>　　　　　Movant and Respondent. | B241325<br>(Los Angeles County<br>Super. Ct. No. BC407761) |

　　　　　APPEAL from an order of the Superior Court of Los Angeles, Elizabeth Allen White, Judge.  Affirmed.

　　　　　Henry M. Lee and Robert Myong for Plaintiff and Appellant.

　　　　　Ervin Cohen & Jessup, Byron Z. Moldo and Matthew J. Eandi for Movant and Respondent.

Appellant Sung J. Lee appeals the trial court's order approving and settling the final report and accounting of the receiver, respondent Kevin Singer, and approving final compensation for respondent. Appellant contends the court abused its discretion in requiring him to pay the fees and expenses incurred by respondent in taking over and operating a business owned by appellant's judgment debtor, which generated insufficient income to provide either a recovery for appellant or payment to respondent. Finding no abuse of discretion, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant obtained a judgment against his former employer, the Wien Bakery LLC (the Bakery), in the amount of $362,364, representing unpaid wages and penalties.[1] The judgment provided for appointment of a receiver pursuant to Business and Professions Code section 17203.[2] Appellant moved ex parte for an order appointing respondent Singer as the receiver.[3]

A. *Order Appointing Receiver*

By order dated February 2, 2011, the court granted appellant's request to have respondent appointed as receiver. The order stated that respondent was to

---

[1] The judgment was also entered jointly and severally against Hae Duk Kim and Mee Young Lee, individually and doing business as the Bakery. None of the judgment debtors are parties to this appeal.

[2] Section 17203 of the Business and Professions Code permits the appointment of a receiver "as may be necessary to prevent the use or employment by any person of a practice which constitutes unfair competition, as defined in [Chapter 5 of the Business and Professions Code], or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

[3] Appellant's application contained no information about the Bakery or its operations. Nor did it explain why appellant believed the Bakery would generate sufficient income to pay his judgment and the costs of a receivership.

2

"take immediate possession and complete control of [the Bakery]." He was instructed to "manage, control, care for, preserve, [and] maintain" the Bakery's business operations and property; to "incur the expenses necessary for the management, control, care for [sic], preservation, and maintenance of [the Bakery]," and "specifically, to operate the business, including employing or terminating labor as [he] deem[ed] fit, purchase supplies, and incur the risks and obligations ordinarily incurred by owners and managers of similar businesses . . . ."

The order also stated respondent's "primary duty" as receiver was "to treat [appellant] as the first creditor to whom payments of any monies shall be made from the business operations." In this regard, it went on to state: "Satisfaction of this primary duty may include, but is not limited to seizure of all income and receivables, closing the business operations completely until payment is made, removing/terminating any and all managers and employees, preventing Defendant's access to and possession of the business and its assets, and removal and sale of Defendant's assets. However, [respondent] shall at all times use his best efforts to ensure that operations continue to the extent possible to satisfy [appellant's] judgment."

With respect to distribution of any income collected, the order stated respondent would "retain, or apply and disburse [it] in the order of priority as follows": "a. To satisfaction of [appellant's] judgment; [¶] b. All business operating expenses, as [respondent] sees fit, to preserve, protect and continue business operations, including employee wages, rent . . . suppliers . . . ; [¶] c. Retention by [respondent] of a working capital fund, in any amount deemed necessary by [respondent]; [¶] d. Any and all accounts payable (both delinquent and current) that [respondent] determines is in the best interest of the Estate to pay; [¶] e. Real estate taxes and any other tax related to any property which [respondent] reasonably determines are necessary and proper in such priority and

3

in such amounts as [respondent] deems appropriate; [¶] f. Payment of any other reasonable expenses to preserve and to protect the assets of the Estate; [¶] g. Maintenance of insurance and payment of premiums thereon; [¶] h. For payment of monthly interest and fees (if any) due from the business to any financial institution."

The order stated that "[a]ll funds collected by [respondent] shall be immediately forwarded to [appellant's] counsel on a bi-monthly basis on or about the 15th and last day of each month . . . ." Respondent was also authorized to pay expenses "'as incurred'" each month from Bakery funds and to pay his own fees from business operations after preparation and service of "periodic interim statements."

The February 2 order contained a provision concerning retention of counsel: "[Respondent] may employ, without further order of this court, the law firm of Ervin Cohen & Jessup LLP [ECJ] as his general counsel. Except that [respondent] shall first notify [appellant's] counsel prior to retaining [ECJ] of the reasons for retaining counsel, and proposed budget for legal services. [Appellant's] counsel may object to the employment of legal counsel by [respondent], in which case, [respondent] shall petition the court to obtain approval to hire legal counsel."

The order approved an hourly rate of $250, plus expenses, for respondent's services. It further provided that respondent or appellant "may at any time, apply to this Court for further or other instructions or orders and for further powers necessary to enable [respondent] to perform [respondent's] duties properly on an ex parte basis."

B. *Respondent's Initial Report*

On July 8, 2011, respondent filed an initial report and notice of intent to pay his own fees and expenses. The report stated that the Bakery had filed for

4

bankruptcy shortly after the February 2 order and that initially, respondent had been unable to assume his role as receiver. However, the bankruptcy petition was dismissed after a hearing on May 3, 2011, at which the defendants failed to appear or file a plan, and respondent begun acting as receiver for the Bakery on May 4.

The July report stated that respondent had cut costs in an attempt to increase revenue, that he was still trying to determine whether the Bakery could be profitably run, and that he had been in "constant communication with the parties" to make them aware of "the challenges that the business is currently facing."[4] Attached to the report were respondent's billings through May 2011, which totaled approximately $15,000.[5] The billings included some hours worked by respondent's support staff, billed at $150 per hour.

---

[4]    Within two weeks of taking over as receiver, respondent had written appellant's counsel that he was "trying to get [his] hands around the financials of the business" and had been "using a lot of sources to get control . . . and keep all the equipment from disappearing," including 24-hour security and "a great deal of [his] staff and [his] time." He reported hiring a professional equipment appraiser. He stated that the defendants had been paying $9,300 to investors, and that he "need[ed] to consult with [his] Counsel to see if they still need[ed] to be paid prior to [appellant's] payment." On June 10, respondent informed appellant's counsel that he had terminated some Bakery employees, but said he could not cut any more without experiencing an increase in overtime wages, and further stated that there was a "qualified operations manager in place" whose monthly salary was $4,000. On July 7, the appraiser hired by respondent, Asset Reliance, Inc., completed its report on the forced liquidation value of the Bakery's furniture, fixtures and equipment. A few days prior to filing the initial report, respondent emailed appellant's counsel that because "[a]ll the equipment, furniture and fixtures [were] encumbered with loans," the best prospect for recovering on appellant's judgment was to keep the business open until July 15th, in case the defendants prevailed in a related bankruptcy and offered appellant a settlement. If that did not occur, the only option would be to "clos[e] the business."

[5]    The majority of the time was expended in May. The billing for that month totaled $12,258.07.

5

C. *Application for Shut Down Order and Second Bankruptcy*

On July 20, 2011, respondent filed an ex parte application for an order authorizing him to shut down the business and sell its assets. The moving papers indicated that the Bakery had generated sales of $136,462 from May 16, 2011 to June 30, 2011, and that immediate operating expenses -- primarily, payroll, payroll taxes, suppliers and workers' compensation insurance -- totaled $124,005, leaving $12,457.[6] However, the Bakery owed more than $15,000 per month for leased equipment and an undetermined amount for rent, neither of which had been paid. As the Bakery was not generating sufficient income to support the equipment lease payments or monthly rent, respondent recommended terminating the Bakery's operations and selling its assets. Based on an appraisal, respondent concluded the Bakery's equipment was worth approximately $15,000 more than current liens, leaving a few thousand to go toward respondent's fees and appellant's judgment after incurring the costs of selling the equipment.

Respondent submitted a declaration stating that he had spent significant time and resources operating the business and determining its financial viability. He described his activities as "overseeing the operations of the business, monitoring and protecting the income of the Business, interacting [with] and monitoring the employees, and communicating with the parties to try and make the Business operate at a profit for the benefit of all parties." He stated he had personally advanced funds to pay immediate expenses. He attached his billings for June and July (through the 20th), which totaled $4,340 and $4,050 respectively, increasing the total billings by respondent to $23,376.

---

[6] The $124,005 also included approximately $10,000 for miscellaneous expenses, including security, repairs and maintenance, accounting and professional services, and utilities. Security for the period cost approximately $3,800.

6

Before this motion could be heard, the Bakery petitioned for Chapter 11 reorganization. Respondent turned over the business and any remaining funds in his possession to the debtor-in-possession.[7]

D. *First Motion for Order Approving and Settling Final Report and Accounting*

On September 9, 2011, respondent moved for an order approving and settling his final report and accounting. This initial motion indicated the Bakery was still in Chapter 11 bankruptcy, that the defendant was in possession of the business and that respondent had therefore "fulfilled his duties and should be discharged." Respondent calculated his total unpaid fees and expenses to be $28,951, of which only $1,468.34 had been paid from Bakery operations, leaving a $27,482.76 balance.[8] Respondent requested that appellant be ordered to pay the balance of his fees and expenses.

---

[7]     Appellant criticizes respondent for turning over the funds in the receivership when the July petition for Chapter 11 bankruptcy was filed. A custodian, including a state court-appointed receiver, who has knowledge of the commencement of a bankruptcy is "barred from taking any further action in the administration of the debtor's property and must deliver to the debtor any assets of the estate in his possession at the time he learns that a bankruptcy case was filed." (*In re Lizeric Realty Corp.* (Bankr. S.D.N.Y. 1995) 188 B.R. 499, 506.)

[8]     The final billing for July indicated an additional $5,400 in fees had been incurred, primarily to draft the motion for order approving and settling the final report and accounting. There were no billings for August or September included. Apart from the time expended preparing the motion, respondent described generally the work he had performed during his tenure as receiver as serving the parties with the appointing order, conducting a site inspection, opening bank accounts, reviewing the books and records, conducting an inventory, meeting with employees to determine staffing needs, performing a financial analysis, negotiating with creditors, implementing a security plan, obtaining an appraisal of assets, reviewing public records, monitoring the cash flow and books on a daily basis, communicating with counsel, and drafting the request for instructions from the court.

Appellant opposed, contending respondent had failed to fulfill his "primary duty" of paying appellant the proceeds from business operations or obey the portion of the order requiring funds to be forwarded to appellant's counsel bi-monthly. Appellant contended that respondent knew early on that the Bakery would be unable to meet its financial obligations and satisfy appellant's judgment, but that he nonetheless continued to operate the business and "squandered" the funds collected. Appellant also objected to specific aspects of respondent's fee request. He contended that retaining an attorney and incurring attorney fees had not been properly approved and that the $150 hour charge for support staff was unapproved and unwarranted.[9] Appellant contended that, in any event, the motion could not go forward, because the bankruptcy court had exclusive jurisdiction over whether respondent's fee was reasonable and whether any disbursements made by respondent were in violation of the Bankruptcy Code, requiring respondent to obtain relief from the bankruptcy stay.

Respondent agreed that the automatic stay resulting from the second bankruptcy petition precluded the trial court from ruling on respondent's request and withdrew the motion.

E. *Second Motion for Order Approving and Settling Final Report and Accounting*

On February 21, 2012, respondent filed a second motion for an order approving and settling his final report and accounting. Respondent presented evidence of having obtained relief from the bankruptcy stay. Respondent included additional billings through February 2012 of $4,565, roughly $2,000 of which was

---

[9]    Respondent's initial motion did not include a request for attorney fees. Appellant requested that the time respondent reported being engaged in consultation with an attorney on his monthly billings -- approximately $900 -- be excluded.

incurred in reviewing appellant's opposition to the first motion and drafting the second motion. At the time of the second motion, respondent sought $32,956 for his fees and expenses and an additional $2,074 billed by ECJ.[10]

The moving papers responded to the contentions raised in appellant's opposition to the initial motion. With respect to appellant's contention that respondent had not complied with the February 2 order governing retention of counsel, respondent presented evidence that appellant had been on notice since early 2011 that ECJ had been hired as respondent's general counsel.[11] With respect to the contention that respondent had not complied with his duties under the February 2 order, the moving papers explained why appellant was "misguided" in thinking respondent could perform his duties of preserving and maintaining the Bakery if all funds collected were forwarded directly to appellant or his counsel: sending all income received to appellant "would have forced [respondent] to close the doors of the [Bakery] immediately upon taking it over, without being able to analyze the viability of the [Bakery], let alone managing, controlling, and preserving the [Bakery]." Respondent explained that many tasks necessary to operating and evaluating the Bakery were assigned to his associates and support staff to avoid having him bill time to perform them at $250 per hour.

Appellant opposed the second motion, again contending respondent should be surcharged or have his fees reduced due to "misconduct [and] mismanagement." Appellant continued to assert that respondent had failed to comply with his obligation under the order to forward monies received from operation of the

---

[10]    The statement from ECJ indicated that fees were incurred in November and December 2011 obtaining relief from the bankruptcy stay so that the second motion for an order approving and settling the final report and accounting could be filed.

[11]    Respondent attached emails sent to appellant's counsel in February and May 2011 in which respondent discussed having consulted an attorney about various bankruptcy issues.

9

Bakery to appellant's counsel on a bi-monthly basis. Appellant faulted respondent for returning funds to the defendants after the Chapter 11 bankruptcy was filed and contended all fees incurred after July 20, 2011 (the date of the application for a shut-down order) were unreasonable and unauthorized. Appellant continued to protest the $150 per hour charged for respondent's support staff and the assessment of attorney fees.

Appellant's counsel did not appear at the hearing. Addressing appellant's objections, respondent's counsel explained that the order required him to "to manage, control, care, preserve, maintain, et cetera, the business," and that it would have been impossible to comply with the order to operate the business if "every penny [went] immediately to [appellant]." The court agreed that respondent could not have "simply siphon[ed] off, for the benefit of [appellant], funds that need[ed] to go to pay payroll and things that the business [was] obligated to pay by law." The court's order approved the final report and accounting and required appellant to pay fees and costs in the amount of $32,956.36, plus the outstanding legal fees to ECJ in the amount of $2,074.45.[12] This appeal followed.

## DISCUSSION

A receiver may be appointed where there are grounds to believe that a judgment debtor has control of property which rightfully should be subject to execution but which cannot be reached by an ordinary levy. (*Morand v. Superior Court* (1974) 38 Cal.App.3d 347, 350.) The instructions contained in a court's order are the receiver's "procedural directions," and while they are binding on the

---

[12] Appellant's counsel later sought relief under Code of Civil Procedure section 473, contending he had intended to appear at the hearing, but had miscalendared the date. The court denied the motion, observing that it had ruled on the motion for an order approving and settling the final report and accounting on its merits, and that its ruling was not affected by appellant's counsel's failure to appear.

10

receiver, they do not affect the substantive rights of the parties. (*Lesser & Son v. Seymour* (1950) 35 Cal.2d 494, 499.) As against third parties, the receiver has no greater rights to the judgment debtor's property than the judgment creditor would have. (*Morand v. Superior Court*, *supra*, 38 Cal.App.3d at p. 350.) A receiver is considered "an agent and officer of the appointing court . . . not an agent of any particular party to the action," and as such "represents all persons interested in the property." (*City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 930.)

"Receivers are entitled to compensation for their own services and the services performed by their attorneys. [Citation.] Generally, the costs of a receivership are paid from the property in the receivership estate. [Citation.] However, courts may also impose the receiver costs on a party who sought the appointment of the receiver or '"apportion them among the parties, depending upon circumstances."' [Citation.] Courts are vested with broad discretion in determining who is to pay the expenses of a receivership, and the court's determination must be upheld in the absence of a clear showing of an abuse of discretion. [Citations.]" (*City of Chula Vista v. Gutierrez* (2012) 207 Cal.App.4th 681, 685-686.)

The functions and powers of a receiver are controlled by the applicable statutes, the order appointing him or her, and by any order subsequently made by the court. (*Morand v. Superior Court*, *supra*, 38 Cal.App.3d at p. 351.) Moreover, "[w]hen a receiver does not give proper attention to the conduct of a business, neglects and mismanages it, he may be refused compensation for his services" or surcharged for excessive fees taken out of the property or business. (2 Clark, Law of Receivers (3d ed. 1959), § 641 (g), p. 1098; see *Aviation Brake Systems, Ltd. v. Voorhis* (1982) 133 Cal.App.3d 230, 235 ["[T]he receiver in his personal capacity may be surcharged for losses to the receivership estate based upon his misconduct or mismanagement."]; *Credit Managers Assn. v. Kennesaw Life & Accident Ins.*

11

*Co.* (9th Cir. 1994) 25 F.3d 743, 751 ["[A] receiver can be held personally liable for his misconduct or mismanagement of the receivership estate."].)

Appellant contends respondent was not entitled to fees due to mismanagement and failure to comply with the court's order. He further contends that ordering him to pay respondent's fees and expenses was error. Finally, he contends that specific items charged by the receiver were improper or unreasonable. We conclude he has demonstrated no abuse of discretion.

A. *Respondent's Entitlement to Fees*

With respect to the alleged mismanagement, appellant essentially faults respondent for failing to shut down the business and sell its assets -- or seek a shut-down order -- earlier than July 20, 2011. We disagree. As receiver, respondent could not been expected to shut down the business and sell off its assets prior to (1) determining whether the business could be operated to produce sufficient income to pay its operating expenses and appellant's judgment, and (2) evaluating its assets for possible sale. Based on the record, the trial court could reasonably find that the roughly two-month period respondent expended in determining whether the business was viable and evaluating its assets was not excessive.

The record reflects that respondent was unable to take over operations of the Bakery and begin his evaluation of its financial status until May 4. By mid-May, respondent reported making progress in understanding the Bakery's financial picture and had hired a professional appraiser to evaluate its furnishings and equipment. Within weeks, he had laid off employees to reduce expenses and put a qualified manager in control of the day-to-day operations. When those initial measures failed to produce sufficient income to pay both the immediate costs of operating the business and the debt to appellant, he recommended waiting until July 15 to determine if the defendants would offer a settlement. That did not

occur, and he filed the application for a shut-down order July 20. In the meantime, Asset Reliance, Inc. completed its evaluation of the furnishings and equipment and determined there would be some value once lienholders were paid.[13] All of this activity took place within approximately two months.

The fact that respondent was unable to generate sufficient income from the Bakery's operations to pay himself or appellant was not proof of mismanagement. The business's expenses simply outweighed its ability to produce income, particularly when incurring the additional costs of a receivership. The trial court reasonably concluded that the allegations of mismanagement did not represent sufficient ground to deny respondent compensation.

Appellant's alternate contention is that respondent should not have been compensated because he failed to strictly comply with the instructions in the February 2 order with respect to priority of payment. As discussed, respondent was told his "primary duty" as receiver was "to treat [appellant] as the first creditor to whom payments of any monies shall be made from the business operations." He was also told to "incur the expenses necessary" to "manage, control, care for, preserve, [and] maintain" the Bakery's business operations, and was specifically empowered to employ labor, purchase supplies and pay day-to-day expenses. The only reasonable interpretation of the order is that appellant would be paid out of income from operations after the immediate costs of generating that income were paid. Respondent could not have performed his duties of preserving and maintaining the Bakery if every dollar collected had been forwarded to appellant. Moreover, in his position as an agent of the court, a receiver could not be expected to exploit current employees and suppliers in order to pay appellant's judgment. During the approximately two months respondent operated the business, he paid

---

[13] The estimated value after taking liens into account was approximately $15,000.

13

out the minimum necessary to keep the doors open and produce income, primarily paying suppliers, employee salaries, and certain labor-related expenses, plus the costs of security. All other significant creditors went unpaid. This represented a reasonable interpretation of and compliance with the court's order. (See 2 Clark, Law of Receivers, *supra,* § 396(j), p. 684 ["Within the limitations set out by the court's order the receiver must necessarily have a discretion and must exercise his best judgment. In such a situation if the receiver obey[s] the court's order and keep[s] within the fair and reasonable implications of the order, he will not be liable for failures."].) Appellant's alternate interpretation of the order -- that respondent should have generated new debt in order to pay off old -- was properly rejected by the trial court, who agreed that respondent had fairly interpreted and complied with the court's instructions.

B. *Imposing Fees on Appellant*

Appellant cites authority for the proposition that liability for the expenses and fees of a receivership should not be placed on a plaintiff who has properly obtained the appointment of a receiver and has established his cause of action.[14] (See *Smith v. Hill* (1965) 237 Cal.App.2d 374, 387.) The majority of courts place no such restriction on the trial court's discretion. (See, e.g., *City of Chula Vista v. Gutierrez*, *supra*, 207 Cal.App.4th at pp. 685-686; *McCarthy v. Poulsen* (1985)

---

[14] We note that appellant's application for appointment of a receiver -- which was essentially granted without opposition -- did not comply with the requirements of the California Rules of Court governing the appointment of receivers. Rule 3.1175 requires an applicant to show "the nature of the emergency and the reasons irreparable injury would be suffered by the applicant during the time necessary for a hearing on notice" and "the nature and approximate size or extent of the business and facts sufficient to show whether the taking of the property by a receiver would stop or seriously interfere with the operation of the business." (Cal. Rules of Court, rule 3.1175 (a)(1) & (4).) Appellant provided no such information.

14

173 Cal.App.3d 1212, 1219-1220, fn. 3.) "'As a general proposition the costs of a receivership are primarily a charge upon the property in the receiver's possession and are to be paid out of said property. However, this is not an invariable rule. In many cases a direct liability is imposed upon the parties to the action, or upon some of them, for the remuneration of the receiver.'" (*Baldwin v. Baldwin* (1947) 82 Cal.App.2d 851, 855, italics omitted, quoting *Andrade v. Andrade* (1932) 216 Cal. 108, 110.)

Here, the court concluded that in the absence of any viable alternative for remunerating the receiver appellant had sought to have appointed, the costs of the receivership should fall on appellant. Not only was appellant the party who requested that a receiver be appointed, but his attorney personally selected respondent to be the receiver and was in close communication with him throughout the post-judgment proceedings. We cannot say the court's decision represented an abuse of discretion.

## C. *Reasonableness of Fees*

Appellant contends the total amount respondent charged for his services was unreasonable, specifically the fees incurred in preparing two requests for an order approving and settling his final report and accounting, the attorney fees for ECJ, and the fees for support staff. "The amount of fees awarded to a receiver is 'in the sound discretion of the trial court and in the absence of a clear showing of an abuse of discretion, a reviewing court is not justified in setting aside an order fixing fees.'" (*Melikian v. Aquila, Ltd.* (1998) 63 Cal.App.4th 1364, 1368.) "[T]he trial court is 'in a better position to know the necessity for the services performed by the receiver and his attorney and to assess their reasonable value' [citation] than is a reviewing court." (*Venza v. Venza* (1951) 101 Cal.App.2d 678, 680, quoting *Kan v. Tsang* (1949) 90 Cal.App.2d 538, 541.)

15

Respondent presented sufficient information in the form of detailed billing statements for the court to determine that the fees and expenses incurred, including the charges for support staff, were reasonable overall.  By engaging in litigation over every aspect of the fees charged during the operation of the Bakery, appellant and his counsel were responsible in large part for the fact that the fees continued to rise after the Bakery was placed in the hands of the bankruptcy court.  The court did not abuse its discretion in concluding that the fees were reasonable or in refusing to exclude the specific items to which appellant objected.[15]

---

[15]  The second motion for order approving and settling the final report was necessitated by the need to obtain relief from the bankruptcy stay.  In preparing the second motion, respondent did not duplicate his previous work, but made an effort to respond to the objections appellant had raised in his opposition to the original motion, including the objection to the retention of counsel and the objection to placing the costs of the receiver on appellant.  With respect to the attorney fees incurred by ECJ, although respondent failed to strictly comply with the procedures outlined in the February 2 order, the record reflects that respondent informed appellant's counsel as early as February 2011 that he was consulting with a bankruptcy lawyer.  Appellant raised no objection, and respondent was entitled to presume that he had none.

**DISPOSITION**

The order is affirmed.  Respondent is awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:


EPSTEIN, P. J.


WILLHITE, J.

17