**In re John Paul GALVIN and Julee Ann Galvin, d/b/a Galvin Custom Combining, Debtors.**

**In re Patrick Joseph GALVIN, a/k/a Joe Galvin, and Mildred V. Galvin, d/b/a Galvin Custom Combining, Debtors.**

**Bankruptcy Nos. 83–05457, 83–05458.**

United States Bankruptcy Court, D. North Dakota.

Jan. 21, 1985.

David Johnson, Fargo, N.D., for debtors.

Richard Olson, Minot, N.D., for PCA.

Marvin Madsen, Minot, N.D., Citizens State Bank and Federal Land Bank.

Nevin Van de Streek, Minot, N.D., for Town and Country Credit Union. Asst. U.S. Atty. Dennis Fischer, Fargo, N.D., for SBA.

William Westphal, Minneapolis, Minn., U.S. Trustee.

### ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the Court on a Motion to Dismiss. By Joint Motion filed on November 2, 1984, Production Credit Association of Minot, Citizens State Bank of Mohall, Federal Land Bank of St. Paul, Small Business Administration, Town and Country Credit Union, and Massey-Ferguson Credit Corporation seek dismissal of the pending Chapter 11 case pursuant to section 1112(b) of the Bankruptcy Code. As reasons therefore, the movants cite a continuing loss and diminution of the estate, the absence of any likelihood of rehabilitation, the inability to effectuate a plan, unreasonable and prejudicial delay, and the failure on the part of the Debtors to comply with the terms of a previous stipulation for adequate protection. The Motion is resisted by the Debtors who request yet additional time to file a substantially modified plan. On January 16, 1985, the Motion to Dismiss came on for hearing along with a hearing on confirmation of the Debtors' Plan filed January 27, 1984. The Court, at the January 16 hearing, also considered the Debtors' request for a further continuance of the confirmation hearing. Consideration of the Motion to Dismiss is made upon the files and records of this case including the stipulations of counsel and the previously approved Disclosure Statement.

### 1.

The instant Chapter 11 case began as two separate Chapter 11 filings, both filed on August 31, 1983. An Order for Consolidation of the cases was entered on May 8, 1984. A Joint Plan of Reorganization, together with a Joint Disclosure Statement, were filed on January 27, 1984. The Disclosure Statement was amended on two subsequent occasions, and approval was received on August 6, 1984. The Plan itself came on for confirmation on October 10, 1984, with numerous objections being lodged by the movants as well as the United States Trustee. At the October 10 hearing, the Court heard and considered the objections and determined at that time that the objections were meritorious and that the Plan in its present form was not capable of being confirmed. The Court advised Debtors' counsel that they would be permitted to continue their efforts towards achieving a confirmable plan but that the confirmation hearing would be continued to a date sometime in the ensuing months. On January 16, 1985, the Plan again came on for consideration. No modifications or changes had been made to the Plan in the ensuing three months, and the Plan again under consideration at the January 16 hearing was the very same Plan previously found incapable of confirmation. In the intervening months, the Debtors retained new counsel who, several days before the scheduled January 16 hearing, requested further postponement of the confirmation hearing citing as a basis therefore a recently commenced preference action against Production Credit Association and Citizens State Bank of Mohall. Both in their response to the creditors' Motion to Dismiss and at the January 16 hearing, counsel for the Debtors conceded that the presently-filed Plan of Reorganization is incapable of confirmation. A further continuance of the Plan confirmation was strongly resisted by the movants who believe that irrespective of a successful preference action, the Debtors are incapable of a successful reorganization. The Court, after considering arguments of counsel and in view of the uncorrected infirmities in the presently-filed Plan, denied any further continuance and ordered that confirmation of the January 27, 1984, Plan of Reorganization be denied.

### 2.

The Debtors, Patrick Joseph Galvin and John Paul Galvin, are father and son who maintain a farming operation in North Dakota and Canada. They also operate a

custom combining operation and a small farm equipment manufacturing company which are also a part of the present reorganization efforts. The nature and extent of the Debtors' assets and liabilities can be established by reference to a stipulation entered into between the parties on July 20, 1984, and the approved Disclosure Statement. From these documents, it appears that the Debtors own 1,440 acres of North Dakota farmland worth $500,000.00; mineral acres worth $45,500.00; and a home in Minot valued at $40,000.00. Real estate owned by Galvin Manufacturing Company has been previously sold' pursuant to court order. They also own 1,280 acres of Canadian farmland worth $390,-000.00 with a $155,000.00 mortgage against it. It does not appear that the Canadian land is subject to the security interests of the movants, and this land is not being treated by the present Plan. The Debtors owned a substantial amount of farm machinery and equipment having a stipulated value of $352,000.00. Pursuant to a stipulation for adequate protection entered into between PCA, Citizens State Bank and the Debtors, approximately 30 pieces of farm equipment and machinery were surrendered to PCA for sale. From the agreed upon values, the machinery turned over had a total value of approximately $130,-000.00. Three other items of equipment secured to General Motors Acceptance Corporation and First National Bank of Minot were also authorized for sale. The Debtors' remaining machinery and equipment is worth approximately $220,000.00.

The Debtors have long-term secured debts to the following entities which are calculated for present value by taking the indebtedness that was stipulated on June 20, 1984, and bringing the amounts current to January 20, 1985, by adding the accrued per diem interest (per diem interest is accruing on the secured indebtedness at the aggregate rate of $360.00 per day): The Small Business Administration—$239,-000.00 secured by all farm machinery, equipment and inventory of Galvin Manufacturing, a first mortgage on the Galvin Manufacturing property, and a third mortgage on the 1,440 acres of farmland; Massey-Ferguson Credit Corporation in the sum of $102,000.00 secured by four combines and one tractor; Production Credit Association of Minot at $446,000.00 secured by all machinery and equipment plus second mortgages on the 1,440 acres of farmland and the Minot home; Citizens State Bank of Mohall—$204,300.00 secured by all machinery and equipment plus mortgages on the farmland and Minot home; Federal Land Bank in the sum of $292,000.00 secured by a first lien on the farmland and a first lien on the Minot house. The total secured debt against the North Dakota real and personal property is $1,400,000.00 including interest calculated to January 20, 1985. Total unsecured debt as reflected in the approved Disclosure Statement is $131,-000.00 plus there remain unpaid real estate taxes in the sum of $11,796.00. Total Canadian liabilities, including the mortgage indebtedness, total $310,000.00. The Debtors, in February 1984, applied for authorization to sell three quarters of their farmland which, if sold, would reduce the value of the existing land by $80,000.00. The reduction in farm acreage is in keeping with their proposed Plan of Reorganization presently filed which calls for the sale of approximately 400 acres plus some 16 pieces of farm equipment. The Debtors in their Motion for continuance of the confirmation hearing suggested that a further modification of the Plan would involve substantial liquidation of all of the North Dakota farmland plus a further surrender of farm equipment.

By stipulation entered into on June 21, 1984, the Debtors agreed to commence making adequate protection payments to Production Credit Association and Citizens State Bank of Mohall jointly of $30,000.00 on August 1, 1984, and $10,000.00 on October 1, 1984, and each month thereafter. It was agreed that failure to make these payments would permit PCA and the Bank to immediately commence foreclosure of their security interest in the farm machinery, equipment and real estate. These payments have not been made, and according

to the terms of the stipulation, these creditors have an immediate right to commence and conclude a foreclosure action.

The approved Disclosure Statement reflects the fact that in 1984 the Debtors' North Dakota land was to be seeded with 451 acres of winter wheat, 468 acres of durum, and 142 acres of barley. Another 2,165 acres of Canadian land was also to be seeded. The Debtors also envisioned continuing with their custom combining operation. Attached to the Disclosure Statement are 1984 income and expense statements for each operation. These reflect an anticipated net return from all operations of $137,367.00 before servicing any of the secured indebtedness. The interest alone on the indebtedness to the six moving creditors accrues at the rate of $131,400.00 per year. The Debtors' 1984 anticipated income appears to be a gross over-statement of reality. The Debtors have filed financial reports with the United States Trustee since September 9, 1983, and these reports reflect an accumulated operating loss of $47,194.00 through September 1984. There has been no debt service except for several payments of adequate protection and payments on several post-petition operating loans. Except for three months, each month over the one-year reporting period has shown a negative cash flow. At the January 16, 1985, hearing, the Debtors offered no further evidence regarding their 1984 income nor did they suggest how reorganization might be accomplished in the face of the crushing debt load and poor operating performance.

### 3.

■ 11 U.S.C. § 1112(b) provides that a case may be dismissed for cause including "(1) continuing loss or diminution of the estate and absence of a reasonable likelihood of rehabilitation; (2) inability to effectuate a plan; (3) unreasonable delay by the debtor that is prejudicial to the creditors; ... and (5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan; ..." The enumerated list of what might constitute cause for dismissal of a Chapter 11 proceeding is non-exhaustive. What might constitute cause for dismissal of a Chapter 11 proceeding is a matter of judicial discretion under the circumstances of each case. *In re Witkowski*, 41 B.R. 723 (Bankr.D.N. D.1984); *In re Becker*, 38 B.R. 913 (Bankr. D.Minn.1984).

■ The facts as above outlined establish sufficient cause to dismiss the case. This case has been pending for over 14 months with a patently unconfirmable plan being the only plan submitted for consideration. Nearly one year has passed since the Debtors originally submitted their Plan of Reorganization for confirmation, and they have made no effort until recently to modify the Plan in recognition of the financial realities. In the meantime, the value of the remaining farm equipment has continued to experience deterioration through use and depreciation. The Debtors, during the intervening year, have disposed of certain of their real estate as well as machinery, and they have no equity in any of the remaining North Dakota real estate which is subject to the various mortgages. No substantial payment has been made to the secured creditors despite a stipulated agreement for adequate protection. In view of the breached adequate protection agreement, the Debtors are in immediate jeopardy of losing their real property by foreclosure in which event they would be left with no North Dakota farmland or machinery with which to carry on either their farming operation or custom combining operation. The Plan filed on January 27, 1984, has been denied confirmation, and the events of the past year indicate an inability on the part of the Debtors to effectuate a confirmable plan. The plan modification alluded to by the Debtors in their Motion for continuance are tantamount to a complete liquidation of the property necessary for reorganization. If such a plan were in fact proposed, it would amount to not a reorganization but a complete liquidation. Even if the Debtors were successful in their preference action, it would not increase the size of their estate

or contribute to the cash necessary for a successful operation. The accomplishment would be to render a portion of the PCA and Citizens State Bank claims unsecured—claims the Debtors previously stipulated were fully secured.

Despite the passage of one year under the protective umbrella of Chapter 11, the Debtors have been unable to operate on even a marginally profitable basis as demonstrated by the financial reports. Postpetition negative cash flow is considered by courts to be evidence of continuing losses required by section 1112(b)(1). *In re Powell Bros. Ice Co.*, 37 B.R. 104 (Bankr.D. Kan.1984). As noted in the *In re Becker* case, the debtor's responsibility to his creditors during the protective period is to make a concerted effort towards reorganizing and rehabilitating his operation and making it profitable. It is not the purpose of Chapter 11 to allow a debtor a permanent cloak of protection while the estate assets continue to diminish and the operational coherency unravels. The function of Chapter 11 is rehabilitation—not disintegration. It is precisely disintegration that has occurred to the Debtors' farming and custom combining operations over the 14 months since their filing. The case has been unreasonably delayed without any prospect of rehabilitation in the offing. The only inference that can be drawn from a totality of these circumstances is that neither the Debtors' farming operation nor custom combining operation is viable and that nothing has been truly accomplished towards rehabilitation over the past 14 months. In the meantime, the estate continues to be burdened by ever-increasing debt, and what remaining assets there are are in immediate jeopardy. The Court can see absolutely no benefit to anyone by allowing this case to remain open any longer.

Accordingly, and for the reasons stated herein,

IT IS HEREBY ORDERED that the above-entitled case be and is hereby DISMISSED.