**In re Mary Jane RUNDLETT, Debtor.**

**Bankruptcy No. 91 B 21781.**

United States Bankruptcy Court,
S.D. New York.

Feb. 10, 1992.

Shaw, Licitra, Parente, Esernio & Schwartz, P.C., Garden City, N.Y., for debtor.

Zalkin, Rodin & Goodman, New York City, for American Sav. Bank, The Bank of New York, Bank of America, N.T. & S.A., Barclay's Bank of New York, and Crossland Sav. Bank, F.S.B.

Cerrato, Sweeney, Cohn, Stahl & Vaccaro, White Plains, N.Y., for Peoples Westchester Sav. Bank.

Ganz Hollinger & Towe, New York City, for Chase Manhattan Bank.

## DECISION ON MOTION TO CONVERT CASE TO CHAPTER 7

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Five banks, which are creditors of Mary Jane Rundlett, the debtor in this Chapter 11 case, have jointly moved pursuant to 11 U.S.C. § 1112(b)(1) and (2) for an order converting this case to Chapter 7 of the Bankruptcy Code. The movants are American Savings Bank ("ASB"), the Bank of New York ("BONY"), Barclay's Bank of New York, N.A. ("Barclay's"), Bank America N.T. & S.A. ("BOA"), and Crossland Savings Bank, F.S.B. ("Crossland"). A sixth bank, Peoples Westchester Savings

Bank ("Peoples") has joined in support of the motion. A seventh bank, Chase Manhattan Bank ("Chase") which holds a mortgage claim against the debtor's home in Bronxville, New York, has appeared but has taken no position as to the motion although it had previously moved for relief from the automatic stay imposed under 11 U.S.C. § 362(a) to foreclose on its mortgage. The Chase motion has not yet been heard.

## FINDINGS OF FACT

1. On November 15, 1991, ASB, BONY and BOA filed an involuntary petition against the debtor for relief under Chapter 7 of the Bankruptcy Code. Thereafter, on December 5, 1991, the debtor converted the involuntary Chapter 7 case to a voluntary case under Chapter 11 of the Bankruptcy Code in accordance with 11 U.S.C. § 706(a). The order for relief was entered on December 5, 1991 and the debtor continues in management of her assets as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2. The debtor is the widow of Donald H. Rundlett, who died on August 25, 1991. She is 56 years of age and has four children ranging in age from 23 to 31. Mr. Rundlett was the Chairman and Chief Executive Officer of Private Capital Partners Inc. ("PCPI"), an investment banking firm which filed with this court a voluntary petition for reorganizational relief under Chapter 11 of the Bankruptcy Code on October 10, 1991.

3. The debtor and her husband had been married for approximately 33 years when he died. Although, she did not participate in his business, she did sign various guaranties and promissory notes with respect to the business, as requested by her late husband. The movant banks are creditors of the debtor as a result of the guaranties and notes which she executed in their favor.

4. In September of 1991, the debtor received approximately $3,500,000.00 in life insurance proceeds from Equitable Life Assurance Society of America as the beneficiary of life insurance policies purchased by her husband on his life. In addition to these proceeds, the debtor owns the family home in Bronxville, New York which is allegedly valued at approximately $1,500,000.00 but may be lacking in equity due to secured claims. At the time of her husband's death, the debtor also owned a 1988 Acura automobile and a condominium on Singer Island, Florida, which is presently listed for sale.

5. Before the conversion of the involuntary Chapter 7 case to a voluntary Chapter 11 case on December 5, 1991, the debtor spent over $1,000,000.00 from the insurance proceeds for the following items:

(a) $745,000.00 in cash for a house in Palm Beach, Florida;

(b) $12,000.00 to a homeowners association with respect to the Palm Beach house;

(c) Approximately $150,000.00 in cash to pay contractors in advance for renovations to the Palm Beach house;

(d) $130,000.00 to the debtor's sister on account of an obligation owed to the sister by the debtor's late husband;

(e) $30,000.00 for the purchase of a new Lexus automobile;

(f) $75,000.00 to bankruptcy counsel; and

(g) $6,000.00 for moving the contents of the Bronxville house to the Palm Beach house.

6. Upon application by ASB, BONY, Barclay's and BOA, this court entered an order dated November 21, 1991, temporarily restraining the debtor from transferring or disposing of any real or personal property until further order of this court. The restraining order carved out an exception to the extent that the debtor was permitted to spend up to $350 per week from property of the estate for ordinary, necessary, and reasonable living expenses.

7. There are approximately $2,000,000.00 remaining from the proceeds of the life insurance policies which the debtor received after her late husband's death. The debtor invested these funds in tax exempt securities which produce an annual income of approximately $120,000.00.

8. The debtor is a housewife with no current source of income. She anticipates that she will require approximately $95,-280.00 annually from the insurance proceeds for ordinary, necessary, and reasonable living expenses, which are projected in her schedules at approximately $7,940.00 per month.

9. The debtor has filed a proposed Chapter 11 plan of reorganization and a disclosure statement. The debtor's plan generally provides that the allowed unsecured claims and the allowed deficiency claims after the payment of allowed secured claims shall receive a *pro rata* share on the effective date of the plan of $1,000,-000.00 from the insurance proceeds. Additionally, such claims will receive a *pro rata* beneficiary interest in a trust fund to be established for the debtor's benefit for life, known as the Rundlett Trust. The Rundlett Trust will be vested with title to the debtor's Florida real estate together with the balance of the insurance proceeds after the *pro rata* distribution of the $1,000,-000.00 cash and the distribution, if any, from the Chapter 11 case involving the debtor's late husband's corporation, PCPI. The debtor's plan provides that the interest on the investment of the Rundlett Trust will be paid to the debtor for her lifetime and the debtor will be granted a life estate in the Florida real estate. The unsecured claims will be paid a *pro rata* distribution of the proceeds of sale of the Florida home after the debtor's death.

10. Counsel for the unsecured bank claims, representing approximately 83 percent of the impaired class of unsecured claims, have stated that the banks object to the debtor's attempt to retain income from the insurance proceeds in excess of $1,000,-000.00 and a lifetime interest in the Florida house as well as interest from the balance of the insurance proceeds held in trust because these assets are property of the estate, which should be distributed to the debtor's creditors. Accordingly, the unsecured bank creditors assert that the debtor's plan is unconfirmable because they will oppose and reject any plan in which the debtor seeks to retain an interest in property of the estate while the creditors are not paid the full allowed amount of their claims as of the effective date of the plan.

## DISCUSSION

A Chapter 11 case may be converted to Chapter 7 or dismissed for cause, whichever is in the best interests of creditors and the estate. There are ten factors delineated in 11 U.S.C. § 1112(b) which constitute cause. The movants rely on the first two factors which are:

> Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—
>
> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
>
> (2) inability to effectuate a plan;

11 U.S.C. § 1112(b)(1) and (2).

The movants contend that any money that the debtor takes from the invested insurance proceeds and related income for her living expenses constitutes a diminution of property of the estate and represents a continuing loss of estate property within the meaning of 11 U.S.C. § 1112(b)(1). On the other hand, the debtor argues that conversion to Chapter 7 is premature because the Chapter 11 case was only commenced less than three months ago and the debtor has assets which are earning approximately $120,000.00 per year which sum exceeds her projected living expenses of approximately $95,000.00 annually. Therefore, the debtor reasons that she is maintaining, if not enhancing, the value of the estate. The debtor's position elides the fact that the debtor does not have assets which are earning interest. The insurance funds are property of the estate for distribution to the creditors. The debtor is unemployed and has no source of income other than from the insurance proceeds. This is not a case where post-petition income, which is excluded from proper-

ty of the estate pursuant to 11 U.S.C. § 541(a)(6), will offset a diminution in property of the estate. In the instant case, the income from the invested insurance proceeds is regarded as proceeds or profits from property of the estate and treated under 11 U.S.C. § 541(a)(6) as property of the estate along with the insurance proceeds. Therefore, the income from the invested insurance proceeds comes into the estate not because the debtor has contributed post-petition income, but because property of the estate generated additional profits which are also considered to be property of the estate.

Hence, while the assets of the estate will generate income in excess of the debtor's living expenses, the debtor will be living at the expense of the creditors without infusing any post-petition income that would not otherwise be regarded as property of the estate. In the context of these facts, every dollar expended by the debtor from the invested funds thereby reduces and diminishes the property of the estate. In *In re Silverstein*, 94 B.R. 284 (Bankr.E.D.N.Y. 1988), the husband and wife, Chapter 11 consumer debtors, had living expenses in excess of their projected post-petition incomes, which were excluded under 11 U.S.C. § 541(a)(6) from being considered as property of the estate. Therefore, the estate was diminished to the prejudice of the creditors.

The instant case reflects a more striking example of a diminution of the estate because the only income in the estate is derived from the interest earned on the invested insurance proceeds. As in the case of *In re Kanterman*, 88 B.R. 26 (S.D.N.Y. 1988), the debtor has no independent source of income. Therefore, to the extent that the debtor applies any of the proceeds of the estate, including the interest earned on such proceeds, the estate will be continuously diminished. As District Court Judge Haight said: .

> I note that neither the statute nor cases cited by the debtor require a finding of significant diminution of the estate. All that need be found is that the

estate is suffering some diminution in value.

*In re Kanterman*, 88 B.R. at 29.

The second prong of 11 U.S.C. § 1112(b)(1) has not been met either because there does not appear to be any likelihood of rehabilitation. As stated in the *Kanterman* case:

> It does not appear there is anything here that can be rehabilitated for we have to return to the basic premise, namely, that the woman is unemployed, she has no income, there is nothing to rehabilitate.

*In re Kanterman*, 88 B.R. at 28. Rehabilitation does not mean the same thing as reorganization for purposes of Chapter 11 because a reorganization may include a complete liquidation. 11 U.S.C. § 1123(b)(4). Rehabilitation signifies that the debtor will be reestablished on a second financial basis, which implies establishing a cash flow from which current obligations can be met. *In re Kanterman*, 88 B.R. at 29; *In re Greene*, 57 B.R. 272 (Bankr. S.D.N.Y.1986).

In the instant case, there is no visible independent cash flow to support the debtor's living expenses other than from the interest earned on the invested insurance proceeds. The debtor cannot expect to be supported by money that belongs to the creditors as property of the estate. There is no assured post-petition property of the debtor, as distinguished from property of the estate, that will contribute to the cash flow to meet the debtor's current obligations. In these circumstances even the meager allowance to the debtor of $350.00 per week for living expenses, as set forth in the temporary restraining order dated November 21, 1991, will lead to a continued diminution of the estate because there will be no cash flow from independent sources to offset this weekly loss. The phrase independent sources is intended to mean assets or income not regarded as property of the estate claimed by creditors. Although a debtor who is not engaged in business is eligible to file a Chapter 11 petition, the debtor's plan must be tenable and must reflect that the debtor will fund the plan with income that does not already

constitute property of the estate. An untenable plan could cause the dismissal or conversion of the case to Chapter 7, in the discretion of the court.

> [T]he Code gives bankruptcy courts substantial discretion to dismiss a Chapter 11 case in which the debtor files an untenable plan of reorganization. See §§ 1112(b) and 1129(a).

*Toibb v. Radloff,* — U.S. —, —, 111 S.Ct. 2197, 2201, 115 L.Ed.2d 145, 154 (1991).

In light of the facts in this case, there is an absence of a reasonable likelihood of rehabilitation because the Chapter 11 petition and plan were filed by a consumer debtor who does not have any independent income and who relies on the property of the estate to satisfy the debtor's normal living expenses and to fund her Chapter 11 plan. *In re Silverstein,* 94 B.R. at 289.

### Inability To Effectuate A Plan

▮ This factor, as expressed in 11 U.S.C. § 1112(b)(2) is somewhat similar to subsection (b)(1). However, to effectuate a plan, the proponent must obtain the requisite consents of two-thirds in amount and more than one-half in number, as stated in 11 U.S.C. § 1126(c), of at least one class of impaired claims in accordance with 11 U.S.C. § 1129(a)(10). The debtor's plan proposes to impair only the class of unsecured and deficiency claims. Therefore, this impaired class must consent to the plan if confirmation is to be effectuated. However, the movants represent approximately 83 percent of the debtor's unsecured claimants and they categorically state that they will not accept any plan under which the debtor will satisfy her normal living requirements with property of the estate and in diminution of the creditors' interests. Therefore, the debtor will be unable to obtain the requisite two-thirds in amount of the unsecured claims. *See Greene,* 57 B.R. at 277. Additionally, the debtor seeks to retain a lifetime interest in the remaining $1,000,000.00 of insurance proceeds and the Florida home which she purchased for the $745,000.00 withdrawn from the insurance proceeds, and which is also property of the estate. Absent the consent of the class of unsecured claims, the debtor is barred by 11 U.S.C. § 1129(b)(2)(B) from retaining a beneficial lifetime interest in the remaining insurance proceeds and the Florida real estate, as proposed under the Rundlett Trust in the plan, unless the class of unsecured claims receive property of value, as of the effective date of the plan, equal to the full allowed amount of their claims. Admittedly, the debtor is unable to pay the allowed amount of the unsecured claims as of the effective date of the plan. Hence, the consent of the unsecured claims is a prerequisite to the debtor's ability to effectuate a Chapter 11 plan and this factor cannot be satisfied.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. The consumer debtor's use of property of the estate to meet ordinary living expenses without any source of income that is not property of the estate results in a continuing loss or diminution of the estate as described in 11 U.S.C. § 1112(b)(1).

3. Without any reliable outside source of income available to the debtor to fund a Chapter 11 plan of reorganization, it follows that there is an absence of a reasonable likelihood of rehabilitation within the meaning of 11 U.S.C. § 1112(b)(1).

4. The refusal of approximately 83 percent of the unsecured claims, which is the only impaired class of claims in this case, to accept any plan under which the debtor retains an interest in the Florida real estate and pays her normal living expenses with property of the estate, means that the debtor is unable to effectuate a plan, as expressed in 11 U.S.C. § 1112(b)(2).

5. The motion to convert this Chapter 11 case to Chapter 7 is granted.

SETTLE order on notice.