In re The **ADBRITE CORPORATION,** Debtor.

No. 02–30225.

United States Bankruptcy Court, S.D. New York, Poughkeepsie Division.

March 24, 2003.

Robinson & Cole, LLP, Stephen H. Gross, David Burke, Eric J. Dale, Christopher J. Major, New York City, for AB Media Corporation, Norman Rothstein and Allan R. Avery.

Richard L. Koral, New York City, for The AdBrite Corporation Debtor and Debtor in Possession.

Greenberg Traurig, LLP, Rick B. Antonoff, New York City, for Carmco Investments, LLC.

## MEMORANDUM OPINION ON AB MEDIA CORPORATION'S MOTION TO CONVERT THE CHAPTER 11 CASE TO CHAPTER 7 AND NORMAN ROTHSTEIN'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO FORECLOSE ON CERTAIN LIENS AND FOR ADEQUATE PROTECTION

CECELIA MORRIS, Bankruptcy Judge.

### INTRODUCTION

AB Media Corporation ("AB Media") moves this Court for the entry of an order, pursuant to Section 1112(b) of the Bankruptcy Code, converting the above-captioned Chapter 11 case of AdBrite Corpo-

ration ("AdBrite" or "Debtor") to a case under Chapter 7 of the Bankruptcy Code, and directing the appointment of a Chapter 7 trustee to promptly administer the liquidation of the Debtor's estate. The United States Trustee, although not formally joining AB Media's motion, noted at the March 4, 2003 preliminary hearing on this motion that this is a "classic case" for conversion.

Norman Rothstein ("Rothstein"), a creditor of AdBrite and a principal stockholder of AB Media, also moves for the entry of an order, pursuant to Section 362(d) of the Bankruptcy Code, terminating the automatic stay to permit Rothstein to foreclose on certain liens and for adequate protection.

AdBrite opposes both motions but has withdrawn its defense, first asserted in its Opposition to the Rothstein Motion, dated December 31, 2002, that Rothstein did not properly perfect the security interest granted to Rothstein by the debtor in connection with Rothstein's $560,000 loan to AdBrite. Rothstein is therefore a perfected secured creditor of Debtor.

Carmco Investment, LLC also filed a statement in opposition to both motions, although it did not appear at the evidentiary hearing for either motion held on March 6, 2003.

### FACTUAL BACKGROUND

AdBrite filed a petition for relief under Chapter 11 of the Bankruptcy Code on October 15, 2002. It holds a patent for advertising kiosks involving the illumination of advertisements on waste receptacles by the use of an electro-luminescent film or an acrylic prism. It has filed further patent applications with respect to adaptations of the patent. AdBrite asserts that it is in the business of manufacturing these advertising kiosks for public space trash receptacles called the AdBrite 360 .

Debtor's Chief Executive Officer is Caesar Passannante ("Passannante"). He testified at the § 341(a) meeting of the creditors on December 3, 2002 that AdBrite only has one "real asset," the patent.

AB Media, a Delaware corporation, was formed for the express purpose of acquiring the assets and assuming some of the liabilities of AdBrite. AB Media's principal stockholders are Messrs. Allan Avery ("Avery") and Rothstein.

Rothstein loaned AdBrite $560,000, in two increments, $150,000 on April 19, 2002, and $410,000 on May 14, 2002. In connection with these loans, Rothstein and Debtor executed the following loan documents: (a) Promissory Note; (b) Amended and Restated Promissory Note; (c) Security Agreement; (d) Security Agreement (Patents); and (e) Security Agreement (Trademarks). On behalf of AdBrite, Passannante executed the loan documents between Norman Rothstein as lender and AdBrite as borrower. AdBrite granted a security interest in all of the Debtor's property, assets, and rights wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof. Rothstein asserts that none of the debtor's assets were, or were intended to be, excluded from Rothstein's lien. Because all AdBrite's assets are liened to Rothstein, AdBrite, has no free and clear assets to use as collateral to obtain future financing.

Avery personally guaranteed nearly two million dollars of institutional loans to AdBrite, on which AdBrite defaulted, and also loaned it money.

AdBrite entered into a manufacturing agreement with a company controlled by Rothstein, Fuel Cell Components & Integrators, Inc. ("FCCI"). AdBrite and FCCI are currently involved in an adversary proceeding in which AdBrite asserts

that (i) it delivered property to FCCI in reliance upon FCCI's false inducements, (ii) the property has a replacement value of $150,000, (iii) the property remains in possession of FCCI, (iv) the property is property of the estate under § 541(a), and (v) FCCI must return the property to AdBrite per § 542(a). FCCI's asserted defenses include set-off and recoupment, breach of contract, waiver and estoppel, and recovery barred by AdBrite's acts. FCCI also counterclaimed for: (i) setoff and recoupment based on labor, overhead, storage, materials, parts, expenses and costs expended for $136,059.78; (ii) quanturn meruit; and (iii) a post-petition administrative claim of $6,795.49 as of early November 2002, which it asserts is accruing.

AdBrite has no signed agreements for debtor-in-possession financing, nor does it have any signed agreements to place paid advertising on its units. It has one signed test agreement with Greyhound, dated September 27, 2002, to place its units at 26 Greyhound bus terminals. Under the agreement, AdBrite must pay Greyhound $75.00 per month for each unit placed.

AdBrite has not prepared a plan of reorganization, has never earned any revenue, and has filed only one tax return in its existence, for 1999.

## DISCUSSION

### AB Media's Motion to Convert the Chapter 11 Case to Chapter 7

The Court has jurisdiction to determine this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

A Chapter 11 case may be converted to a Chapter 7 case or dismissed on request of "a party in interest," whichever is in the best interest of creditors and the estate. 11 U.S.C. § 1112(b); *In re Denrose Diamond*, 49 B.R. 754, 756 (Bankr.S.D.N.Y. 1985). Section 1109(b) provides a nonexclusive list of who may be a party in interest. Generally, a party in interest includes the debtor, a creditor, an equity security holder, a creditors' or equity security holders' committee, the trustee, and any indenture trustee. Here, AdBrite scheduled AB Media's claim against it at $421,751, effectively conceding that AB Media is a creditor. Accordingly, AB Media is a party in interest who may bring this motion.

Section 1112(b) provides that the Bankruptcy Court may dismiss or convert a Chapter 11 case "after notice and a hearing," which means after such notice and opportunity for a hearing as is appropriate in the particular circumstances. Bankruptcy Rule 2002(a)(5) requires 20 days notice of the hearing on dismissal or conversion of a case to another chapter. Surprise conversions are prohibited. Here, there has been no surprise. The motion was properly noticed, the parties consented to the preliminary and evidentiary hearing dates, and those hearings took place.

Section 1112(b) provides in pertinent part that a court may convert a case under Chapter 11 to Chapter 7 for cause, including: (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; (2) inability to effectuate a plan; (3) unreasonable delay by the debtor that is prejudicial to creditors; or (10) nonpayment of any fees or charges required under chapter 123 of title 28.

Under § 1112(b), the burden is on the movant to establish "cause." *Loop Corp. v. United States Trustee*, 290 B.R. 108, 112 (D.Minn.2003); *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr.

S.D.N.Y.1995). Once cause for relief is shown, the Court has broad discretion to either convert or dismiss the Chapter 11 case. Although this discretion is not completely unfettered, the Court is not required to give exhaustive reasons for its decision. *In re Koerner,* 800 F.2d 1358, 1368 (5th Cir.1986).

▮ A Chapter 11 case may be converted or dismissed under § 1112(b)(1) for continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation. The purpose of this ground is "to prevent the debtor-in-possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." *United States Trustee v. GPA Technical Consultants, Inc. (In re GPA Technical Consultants, Inc.),* 106 B.R. 139, 141 (Bankr.S.D.Ohio 1989). Section 1112(b)(1) was written in the conjunctive; the movant must prove not only a continuing loss to or diminution of the estate, but also must prove that there is no likelihood of rehabilitation. *Lizeric,* 188 B.R. at 503.

▮ To determine whether there is a continuing loss to or diminution of the estate, a court must make a full evaluation of the present condition of the estate, not merely look at the debtor's financial statements. *In re Moore Construction, Inc.,* 206 B.R. 436, 437–38 (Bankr.N.D.Tex. 1997). A continuing loss or diminution of the estate may be tolerated where reorganization is feasible and the pattern of unprofitable operations can be reversed as a result of a successful reorganization. The debtor, however, should not continue in control of the business beyond a point at which reorganization no longer remains realistic. The courts must evaluate losses on a case-by-case basis. Small losses over an extended period may be acceptable, whereas large losses in a short period may indicate that rehabilitation is not likely. *In re*

*Photo Promotion Assocs.,* 47 B.R. 454, 458–59 (S.D.N.Y.1985).

▮ In addition to the amount and the nature of the losses, there is a temporal quality to the determination. At the early stages of the case, to prove an absence of a reasonable likelihood of rehabilitation, the movant must show that there is no more than a "hopeless and unrealistic prospect" of rehabilitation. *In re Economy Cab & Tool Co., Inc.,* 44 B.R. 721, 724 (Bankr. D.Minn.1984).

▮ Section 1112(b)(1) codifies a two-prong test: continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation. *In re Denrose Diamond,* 49 B.R. 754, 756 (Bankr.S.D.N.Y.1985). Courts have held that a negative cash flow postpetition and an inability to pay current expenses satisfy the elements of § 1112(b)(1). *In re Route 202 Corp. t/a Lionti's Villa,* 37 B.R. 367, 374 (Bankr.E.D.Pa.1984) ("Obviously, if the debtor has negative cash flow after entry of the order for relief in the chapter 11 case, the [elements of § 1112(b)(1) are] satisfied"); *see also In re Galvin,* 49 B.R. 665, 669 (Bankr.D.N.D.1985) ("Post-petition negative cash flow is considered by courts to be evidence of continuing losses required by section 1112(b)(1)"); *Diamond,* 49 B.R. at 756 (*citing In re 3868–70 White Plains Road, Inc.,* 28 B.R. 515 (Bankr.S.D.N.Y.1983)) ("negative cash flow and an inability to pay current expenses has, however, prompted conversion."). Conversion is not warranted despite the existence of short-term postpetition operating losses where there exists a realistic possibility of rehabilitation. However, "a positive cash flow will not guard against conversion when it masks a static enterprise whose financial statements do not account for costs necessary to doing business." *Id.; see also In re NuGelt, Inc.,* 142 B.R. 661, 667 (Bankr.D.Del.1992)

(debtor's shareholders and insiders using property of the estate to fund postpetition expenses constituted a continuing loss to or diminution of the estate).

■■■ With respect to the second prong of § 1112(b)(1), rehabilitation does not mean the same thing as reorganization for purposes of Chapter 11 because a reorganization may include an orderly or complete liquidation. *In re Rundlett,* 136 B.R. 376, 380 (Bankr.S.D.N.Y.1992). In this context, rehabilitation means to put back in good condition and reestablish on a sound basis. *Lizeric,* 188 B.R. at 503; *In re Kanterman,* 88 B.R. 26, 29 (S.D.N.Y. 1988). It signifies that the debtor will be reestablished on a secured financial basis, which implies establishing a cash flow from which its current obligations can be met. *Rundlett,* 136 B.R. at 380. Courts have held that the occurrence of short-term postpetition losses is not grounds to convert or dismiss a bankruptcy case where financial viability is reasonably likely in the near future. *See, e.g., In re Garland Corp.,* 6 B.R. 456, 460 (1st Cir. BAP 1980).

■■■ A court may convert or dismiss a Chapter 11 case under § 1112(b)(2) for the "inability to effectuate a plan." "Inability to effectuate a plan" means that the debtor lacks the ability to formulate a plan or to carry one out. *In re Dark Horse Tavern,* 189 B.R. 576, 582 (Bankr.N.D.N.Y.1995).

■■■ Pursuant to § 1112(b)(3), the court may convert or dismiss a Chapter 11 case for "unreasonable delay by the debtor that is prejudicial to creditors." The key words are "unreasonable" and "prejudicial." Not all delays are unreasonable, and not all unreasonable delays are prejudicial. *In re Sphere Holding Corp.,* 162 B.R. 639, 643 (E.D.N.Y.1994) ("In determining whether a debtor's delay has been unreasonable, a bankruptcy court must take into consideration the context of the delay.").

■■■ Decisions under § 1112(b)(3) generally focus on the time taken by the debtor to submit a confirmable plan. However, pre-filing delay and failure to submit timely financial reports may also constitute cause for dismissal or conversion. Section 1112(b)(3) expresses no time limit; each case must be dealt with upon its individual facts.

Section 1112(b)(10) was added by the 1986 amendments. Chapter 123 of Title 28 deals with fees and costs in federal courts in general. Specifically, 28 U.S.C. § 1930 prescribes the filing fees in Chapter 11 cases until confirmation, conversion, or dismissal. In the event that a debtor fails to pay the fees or charges required under Chapter 123 of Title 28, a party in interest, or the United States trustee, may apply for an order under Code § 1112(b)(10) converting the case to a case under Chapter 7 or dismissing it, whichever is in the best interest of creditors and the estate.

A finding of cause is not limited to the grounds stated in § 1112(b). *See* 11 U.S.C. § 102(3) (in construing the Bankruptcy Code, the terms "includes" and "including" are not limiting); *In re Gonic Realty Trust,* 909 F.2d 624, 626 (1st Cir. 1990) ("in determining 'cause' for dismissal the court may consider other factors as they arise and use its powers to reach appropriate results in individual cases"); *see also Michigan Nat'l Bank v. Charfoos (In re Charfoos),* 979 F.2d 390, 392 (6th Cir.1992) (bad faith may serve as a ground for dismissal although it is not expressly mentioned under § 1112(b)); H. Rep. 595, 95th Cong., 1st Sess 406 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6362 ("The list is not exhaustive. The court will be able to consider other factors as they arise, and

to use its equitable powers to reach an appropriate result in individual cases.").

■■■ Because the list of grounds for converting or dismissing a Chapter 11 case under § 1112(b) is illustrative, not exhaustive, the court may consider other grounds and use its equitable powers to reach an appropriate result. *C–TC 9th Ave. Partnership v. Norton Co. (In re C–TC 9th Ave. Partnership)*, 113 F.3d 1304, 1311 (2d Cir.1997). The existence of one or more grounds does not compel the Court to convert or dismiss. Instead, the Court exercises its discretion in deciding whether to convert or dismiss despite the existence of a particular ground. *In re Fairwood Corp.*, No. CIV. 99–3177, 2000 WL 264319, at *2 (S.D.N.Y. March 9, 2000), *aff'd*, 1 Fed.Appx. 12 (2d Cir.2001). Additional factors upon which Courts have based decisions to convert or dismiss include:

1. The failure to file required operating reports. *See In re Berryhill*, 127 B.R. 427, 433 (Bankr.N.D.Ind.1991) ("the failure to file operating reports in itself constitutes cause for dismissal");

2. Filing materially inaccurate operating reports. *See In re Continental Holdings, Inc.*, 170 B.R. 919, 929 (Bankr.N.D.Ohio 1994) ("timely and accurate financial disclosure is the life blood of the Chapter 11 process");

3. A debtor-in-possession's dereliction of its fiduciary duty to creditors. When a corporation files for protection under Chapter 11, the officers and managing employees have a fiduciary duty to creditors and shareholders. This creates an "obligation to treat all parties, not merely the shareholders, fairly." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355–56, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985);

*see also In re Hampton Hotel Investors, L.P.*, 270 B.R. 346, 358 (Bankr. S.D.N.Y.2001) (citing extraordinary instances of self-dealing by the debtor's principal and the court's total lack of confidence in the principal's ability and inclination to comply with his fiduciary duties of a debtor in possession as cause under § 1112(b)); *Babakitis v. Robino (In re Robino)*, 243 B.R. 472, 486 (Bankr.N.D.Ala.1999) (a debtor's willful failure to act as a fiduciary constitutes cause); *In re Fed. Roofing Co., Inc.*, 205 B.R. 638, 642–43 (Bankr.N.D.Ala.1996) (debtor-in-possession's maintenance of ongoing financial transaction with insider is a breach of fiduciary duty and constitutes cause for relief under § 1112(b));

4. Lack of good faith in filing the petition or proposing a plan. *See In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 985 (Bankr.N.D.N.Y.1988);

5. Failure to maintain adequate books and records. *See In re Larmar Estates, Inc.*, 6 B.R. 933, 936 (Bankr. E.D.N.Y.1980) ("failure to maintain books and records constitutes cause for dismissing or converting the ... Chapter 11 case."),

6. A change in the debtor's business identity prior to filing;

7. Inability to effectuate confirmation. *See Larmar Estates*, 6 B.R. at 936;

8. A defunct debtor incapable of reorganizing. *In re Westerleigh Development Corp.*, 141 B.R. 38, 41 (Bankr.S.D.N.Y.1992) (nothing to reorganize where debtor's business is defunct); and

9. An unauthorized filing of a petition. *In re Bel–Aire Investments, Inc.*, 97 B.R. 88, 89–90 (Bankr.M.D.Fla. 1989).

 The most common equitable ground for conversion or dismissal is a lack of good faith on the part of the debtor. An implicit requirement to the right to file is good faith on the part of the debtor, the absence of which may constitute grounds for dismissal under § 1112(b). Factors relevant to a determination of whether a Chapter 11 petition was filed in good faith include (1) whether the debtor had any assets, (2) whether the debtor had an ongoing business to reorganize, and (3) whether there was a reasonable probability of a plan being proposed and confirmed.

 In addition to a lack of good faith in filing the petition or proposing a plan, "bad faith" can be grounds for dismissing or converting a case in which the debtor has acted fraudulently. Generally, a determination of a lack of good faith involves finding an intent to abuse the judicial process and the purposes of the reorganization process.

 An oft-cited list of indicia of "bad faith" has developed in the case law. These factors include:

1. The prepetition conduct of the debtor has been improper;
2. There are few debts to non-moving creditors;
3. The petition was filed on the eve of foreclosure;
4. The foreclosed property is the sole or major asset of the debtor;
5. The debtor has no ongoing business or employees;
6. There is no possibility of reorganization;
7. The debtor's income is not sufficient to operate; and
8 The debtor filed solely to create the automatic stay

*In re SB Properties,* 185 B.R. 198, 205 (E.D.Pa.1995). These factors are illustrative only and should not be substituted for the court's sound discretion.

Some of the cases, while considered in the context of good faith, have in common certain factors, which collectively have been described as the "new debtor syndrome." *See, e.g., Little Creek Development Co. v. Commonwealth Mortgage Corp. (In re Little Creek Development Co.),* 779 F.2d 1068, 1073 (5th Cir.1986). The new debtor syndrome is characterized by a one-asset entity, which has been created on the eve of foreclosure to isolate the insolvent property and its creditors. The new entity usually has few if any unsecured debts, no employees other than the controlling participants, no means of servicing the debt other than through the transferred property, no cash flow, and no ongoing business prospects. Generally, the courts focus on whether the debtor has a realistic prospect of effectively reorganizing, or is trying to "buy time" in the hope that the distressed assets will appreciate sufficiently to service the debt. Thus, in cases where the debtor has no assets or ongoing business, reorganization is unlikely, and the debtor is formed just before the petition is filed, the court may regard the filing of the Chapter 11 petition as lacking in good faith.

 The determination of whether relief is appropriate under the statute is made on a case-by-case basis. *C–TC 9th Ave. Partnership,* 113 F.3d at 1311, *Laguna Assocs. Ltd. P'ship v. Aetna Cas. & Sur. Co. (In re Laguna Assocs. Ltd. P'ship),* 30 F.3d 734, 737 (6th Cir.1994). The party requesting relief bears the burden of proving that cause exists by a preponderance of the evidence. *See In re Woodbrook Assocs.,* 19 F.3d 312, 316 (7th Cir.1994).

With this legal backdrop in mind, the Court turns to the facts as established at the evidentiary hearing and through the

case file. These findings of fact reflect the Court's weighing of the evidence, including determining the credibility of the witnesses. In doing so, the Court considered the witnesses' demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language or nuance of expression. *See* Fed. R. Bankr.P. 7052, incorporating Fed.R.Civ.P. 52 (applied to contested matters under Fed R. Bankr.P. 9014). The Court finds that Passannante, the primary witness at the evidentiary hearing, was not credible.

■■■ The parties made extensive factual and legal arguments in the briefs, at previous court appearances and at the evidentiary hearing. The Court considered all of those positions, regardless of whether they are specifically referred to in this Memorandum Opinion.

The fundamental factual conclusions that the Court draws based on all of the evidence are:

1. Passannante admitted that AdBrite has one real asset, the patent.

2. Passannante testified that on October 14, 2002, he was threatened with foreclosure if he didn't accept certain terms for a merger or asset purchase agreement with AB Media.

3. Passannante also testified that the next day, October 15, 2002, AdBrite filed its Chapter 11 petition.

4. AdBrite's books and records are not reliable. Passannante, when asked what he knew about AdBrite's books and records, admitted, "Right now, not a lot." He also admitted that AdBrite's books and records were unreliable.

5. Passannante further testified that no one at AdBrite, its managing agents and employees, individually or collectively, has a solid, satisfactory understanding of Ad-Brite's books and records or of the Ad-Brite's overall financial condition. When asked why, he responded, "Because no one seems to care."

6. AdBrite's operating reports are materially inaccurate.

7. AdBrite cannot reorganize because it does not have any employees, much less any employees who have experience procuring advertising contracts.

8. AdBrite has not met its obligations as a fiduciary for the Chapter 11 estate.

9. AdBrite has not filed a plan for reorganization or a disclosure statement.

10. AdBrite has not filed a § 364 motion to obtain credit or to seek approval for financing.

11. AdBrite is not current in paying post-petition bills.

12. AdBrite, originally having $25,000 per month in post-petition bills, continues to incur purported post-petition obligations of $12,000 per month.

13. AdBrite has a negative cash flow postpetition and an inability to pay current expenses.

14. Passannante testified that at least four more employees were needed before AdBrite could make a profit.

15. AdBrite is using property of the estate to fund postpetition expenses.

16. AdBrite's operating statements do not include bank statements and do not comply with United States Trustee guidelines.

17. AdBrite's operating statements show continued losses.

18. AdBrite's January operating statement was not filed until March 5, 2003, one day before the evidentiary hearing and one day after the United States Trustee mentioned at the preliminary hearing that it

had not been filed. It's late filing continued a disturbing trend in this case. Operating statements for October, November and December of 2002 were filed February 5, 2003, all substantially late.

19. AdBrite has not paid quarterly fees under 28 U.S.C. § 1930. See UST Exhibit One, Account Reconciliation. That alone is a specific ground for conversion.

20. AdBrite has not made any profits post-petition.

21. AdBrite has lost money every month post-petition.

22. The latest operating statement, for January 2003, which was untimely filed March 5, 2003, shows a loss for the month of approximately $23,000.

23. Passannante estimated AdBrite's current expenses at about $12,000 per month.

24. Despite showing a negative cash flow last month of about $23,000, nothing has changed, there has been nothing concrete, no signed agreement that includes payments to be made to and not from AdBrite that would demonstrate a new-found ability for AdBrite to meet its current expenses.

25. Before AdBrite might make a profit the following, at a minimum, would have to occur first: (i) negotiations for a financing agreement must be completed, (ii) a fully executed financing agreement must be entered into with Court approval, (iii) AdBrite must receive distribution of the funding pursuant to that signed agreement, which would take an unclear amount of time to receive after signing the agreement, (iv) approval by the appropriate government authorities must be received to install the units; (v) manufacturing and installation of the cans must take place which would take another 60–90 days, and (vi) AdBrite still would have to wait another 60 days to receive payments.

26. AdBrite does not have any signed advertising agreements in place now that provide for payments to be made to AdBrite, nor was any credible evidence admitted that would indicate any such agreements would be forthcoming within a reasonable amount of time.

27. AdBrite does not have any signed manufacturing agreements in place now, nor was any credible evidence admitted that would indicate any such agreements would be forthcoming within a reasonable amount of time.

28. AdBrite does not have any signed financing agreements in place now, nor was any credible evidence admitted that would indicate any such agreements would be forthcoming within a reasonable amount of time.

29. AdBrite's responses to AB Media's document requests have been inadequate.

30. Six of the seven members of the unsecured creditors' committee voted in favor of conversion.

31. Passannante wrongfully used corporation money for his personal expenses. In fact. Passannante admitted that he tries to have everything he does paid for by his business, stating that's what entrepreneurs do.

32. Passannante has made repeated false representations that financing would be forthcoming.

33. There is nothing in the record to suggest that financial viability is reasonably likely in the near future, and

34. AdBrite has failed to sustain its burden of demonstrating the possibility, let alone the likelihood, of rehabilitation.

The movants presented multiple instances where AdBrite's books and records were incomplete, inconsistent and/or unreliable. AdBrite based its operating re-

ports on these books and records. Thus, the operating reports cannot and do not present a reliable financial picture of Ad-Brite. The duty to create and maintain records that accurately reflect a debtor's financial activities while under the protection of the Bankruptcy Court is one of a debtor's basic obligations. AdBrite has failed woefully in that duty despite having been given quite a long time to sort out these problems.

AdBrite also has failed in its duty to treat all parties, not just the shareholders, fairly. The breaches include Passannante facilitating and usurping corporate opportunities to himself and transfer of business from the debtor. *See Galvin,* 49 B.R. at 669 ("It is not the purpose of Chapter 11 to allow a debtor a permanent cloak of protection while the estate assets continue to diminish and the operational coherency unravels.").

### Grounds for Conversion

This Court finds at least six grounds that demand conversion of this Chapter 11 case to Chapter 7:(1) the continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (2) the inability to effectuate a plan; (3) AdBrite's bad faith in filing the petition; (4) AdBrite's failure to file timely, accurate operating statements; (5) AdBrite's failure to make quarterly fees under 28 U.S.C. § 1930; and (6) AdBrite's books and records are not reliable.

For the reasons stated, the Motion to Convert is granted and this Chapter 11 case will be converted to a case under Chapter 7 of the Bankruptcy Code. Creditors are entitled to be notified that the case has been converted. Pursuant to Bankruptcy Rule 2002(f)(2), the clerk shall notify the creditors of the conversion. An Order consistent with this Memorandum Opinion already has issued.

### Norman Rothstein's Motion for Relief from the Stay Pursuant to Section 362

The Court shall hold in reserve its decision on Rothstein's Motion for the entry of an order, pursuant to Section 362(d) of the Bankruptcy Code, terminating the automatic stay to permit Rothstein to foreclose on certain liens and for adequate protection. The Court recognizes that Rothstein previously raised the issue of § 362(e). According to § 362(e), a party filing a request for relief from the automatic stay is entitled to have a hearing on their motion within 30 days of filing or the stay automatically terminates. 11 U.S.C. § 362(e). "If the Bankruptcy Court conducts a final hearing on the matter within this 30 day window, the statute is satisfied and the Bankruptcy Court may either decide the matter at the hearing or continue the stay pending the Court's ultimate decision." *In re Bennett Funding Group, Inc.,* 255 B.R. 616, 639 (N.D.N.Y.2000).

Here, the first preliminary hearing on Rothstein's Motion was held on January 7, 2003. At that time, Rothstein had failed to serve and file with his motion a memorandum of law as required by S.D.N.Y. LBR 9013–1. Five weeks later, on February 14, 2003, Rothstein filed this required memorandum. At the January 7th hearing, counsel for Rothstein requested, and the debtor consented to, an evidentiary hearing on the motion for relief from the automatic stay to take place at the same time as a hearing on a planned motion to convert the Chapter 11 case to Chapter 7. Counsel for Rothstein and counsel for the Debtor, at that hearing and on the record, consented to holding another preliminary hearing on February 25, 2003 on the Motion for Relief from the Stay and, if appropriate, on the proposed Motion to Convert the Debtor's Chapter 11 case to Chapter 7. Counsel for Rothstein and counsel for the Debtor, at that hearing and on the record,

also consented to holding a final hearing of the Motion for Relief from the Stay and, if appropriate, a hearing on the proposed Motion to Convert the Debtor's Chapter 11 case to Chapter 7, on February 28, 2003. The Court issued an Order dated January 10, 2003, which, among other things, memorialized those events.

The February 25th and 28th preliminary and evidentiary hearings were adjourned by request of Rothstein's attorney and on consent of the debtor's attorney to March 4th and March 6th respectively. Pursuant to this request and consent, the Court conducted the final evidentiary hearing on this issue on March 6, 2003.

As noted by Judge Kahn of the Northern District of New York, § 362(e) provides no substantive time limitation upon which a Court must actually issue a decision. *Bennett Funding Group*, 255 B.R. at 640 ("If, however, the Bankruptcy Court did conduct final hearings on this issue, this Court notes that section 362(e) provides no substantive time limitation upon which a court must actually issue a decision. As such, if the Bankruptcy Court did hold final hearings . . . but has not yet issued a decision on these claims, it is also in compliance with section 362(e)").

Here, the Court finds compelling reasons to reserve its decision on this motion. This case was converted from Chapter 11 to Chapter 7 on March 6, 2003. Under the circumstances of this case, the Court finds it appropriate to hold its decision on Rothstein's motion in abeyance for a reasonable amount of time to give the Chapter 7 Trustee time to evaluate the estate and liquidation. The Court notes that although it does not now issue a decision on this motion for relief from the automatic stay, the final hearing on this motion was held on a date consented to by the parties and, thus, the Court remains in compliance with § 362(e).

Nor is this Court alone in holding in abeyance for a reasonable period of time its decision on a motion seeking to terminate the automatic stay when granting a motion to convert a Chapter 11 proceeding to Chapter 7. *See In re Gardner,* Case No. 02–43420 at *13 (ALG) (Bankr.S.D.N.Y. March 14, 2003). In *Gardner,* a creditor moved to. convert the Chapter 11 proceeding to Chapter 7 and also moved for relief from the automatic stay. Thus, the *Gardner* Court, for all intensive purposes, was in the same procedural posture when it rendered its decision as is this Court now. Like here, the *Gardner* Court, the Honorable Allan L. Gropper presiding, held that conversion was appropriate. Judge Gropper further held, in regard to the motion for relief from the automatic stay, "[s]ince the case must be converted, the Court believes that it would be appropriate to hold the motion for relief form the stay under § 362(d) in abeyance pending an immediate investigation of the facts and circumstances by a Chapter 7 trustee."

The parties are invited to brief the issue of whether AdBrite's failure to respond appropriately to AB Media's document demands, and its failure to abide by S.D.N.Y. LBR 7034–1, prohibits AdBrite from offering into evidence any alleged increase in the value of the patent based on the additional fourteen patent applications filed by Passannante.